## CITY OF SOMERVILLE *v.* BEAL, Receiver.

*(Circuit Court, D. Massachusetts. March 14, 1892.)*

1. BANKS AND BANKING—CHECKS FOR COLLECTION—INSOLVENCY.

Whether the title to a check deposited with a bank passes to the bank before collection, so as to immediately create the relation of debtor and creditor between it. and the depositor, is a question of fact, depending upon the circumstances and. course of dealing in each particular case.

2. SAME—RIGHTS OF DEPOSITOR.

Certain checks marked "For deposit" were deposited in a bank at a quarter to 3, on Saturday, and credit was immediately given for the amount thereof on the pass-book. The bank closed at 3, and the next day was declared insolvent, with the checks still in its hands. It was the bank's custom, at the close of each day's business, to balance its books, crediting depositors with the amount of their checks, and, if a check was subsequently returned unpaid from the clearing-house, it was charged off to the depositors. The depositor in this instance did not know of this custom. He had made deposits with the bank for several years without any special arrangement, and had never drawn against uncollected checks, except by particular understanding. *Held* that, on these facts, title had passed to the bank so as to create the relation of debtor and creditor.

3. SAME—PLEADING—FRAUD.

But where the foregoing facts were alleged in the bill, and connected with the further allegations that, at the time the checks were received, the bank was, "irretrievably insolvent, and made so by the operations of the president and two others of the directors," and that the depositor then believed it to be solvent, and had no means of knowing of its insolvency, this was sufficient to show fraud, and to render the bank liable to return the checks or their proceeds.

4. SAME.

It was not necessary for the bill to specifically allege that the officers of the bank had knowledge of its insolvency, since such knowledge would be implied from the allegation that the insolvency was caused by the president and two directors.

In Equity. Suit by the city of Somerville against Thomas P. Beal, receiver of the Maverick National Bank, to recover the proceeds of certain checks. Heard on demurrer to the bill. Overruled.

*Selwyn Z. Bowman,* for complainant.

*Hutchins & Wheeler* and *Frank D. Allen,* U. S. Atty., for defendant.

COLT, Circuit Judge. This is a bill in equity brought by the city of Somerville against Thomas P. Beal, receiver of the Maverick National Bank, claiming title to certain checks (or their proceeds) deposited in said bank on the afternoon of October 31, 1891, the day the bank closed its doors for business. The case was heard upon demurrer to the bill, the receiver contending that the title in the checks passed to the bank, and that the city of Somerville must come in with the general creditors. The main allegations of the bill are, in substance, as follows: On Saturday, October 31, 1891, at about a quarter before 3 o'clock in the afternoon, the treasurer of the city of Somerville deposited in the Maverick National Bank checks on different banks, amounting to $21,171.40, and $8,450 in cash. The bank closed its doors at 3 o'clock on that day. The treasurer handed the checks (with the other deposit) to the receiving teller, with a deposit ticket, and at the same time his pass-book, and the teller at once credited the total amount of the deposit therein. The treasurer stamped the following indorsement on the back of each check: "For deposit. JOHN F. COLE, Treas. & Coll. City of Somerville." After

the bank closed its doors on that day, the books of the bank, according to the usual custom, were posted and balanced, and the amount of said checks was placed to the credit of said city of Somerville, and the checks put in the clearing-house drawer, with other checks intended for presentation at the clearing-house on the following Monday. On the following day, Sunday, the bank was declared insolvent, and the bank examiner took possession of the same. All the assets and property of the bank were held by the examiner until the time the receiver was appointed. On Monday the bank examiner caused the checks to be sent to the clearing-house, where they were paid, and the proceeds thereof were received by the examiner. Subsequently these proceeds were transferred to and are now held by the receiver. They have been kept in the accounts of the receiver separate and distinct from the other funds of the bank. The city treasurer had for several years made deposits with said bank without any special agreement in regard thereto. There was no agreement that checks, when deposited, should be considered as cash, or that the treasurer could draw against them before collection; and the treasurer never drew a check for which his deposit was not sufficient, without counting the proceeds of uncollected checks, except in a few instances, where a special arrangement was made with the bank by which the bank agreed to advance him certain specified amounts of money on his checks in excess of deposits. There was no express understanding that the checks should or should not be credited to the city immediately on deposit, but they were always so credited on the pass-book at the time of the deposit. The treasurer did not know whether the books of the bank were balanced after the close of business on each day, and credit given on the books of the bank for checks deposited on that day, but he did know that the amount of such checks was at once credited to him on his pass-book. It was the custom of the bank, on balancing the books at the close of each day's business, to credit deposits on that day at their face value, and without discount; and it was also the custom of the bank, in case a check was returned from the clearing-house uncollected, forthwith to charge off to such depositor any such check, and thus cancel the credit. It was the practice of the Maverick Bank, and is the practice of the other banks in Boston, in some cases, to allow depositors to draw against checks deposited before such checks are collected, and in some cases not, depending upon the bank's opinion of the reliability of the depositor and the makers of the checks. The treasurer, at the time of making the deposit, believed the bank was solvent, and he had no knowledge, or means of knowing, of its insolvency. The bill further alleges that, at the time the checks were received by the bank, it was irretrievably insolvent, and made so by the operation of the president and two others of the directors.

Two questions are raised by this demurrer: *First.* Did the title to these checks pass to the Maverick Bank when it credited the amount of such checks on the complainant's pass-book? *Second.* If the title to the checks would have passed under ordinary circumstances, do not the allegations of the bill as to the condition of the bank at the time constitute

such a fraud upon the complainant as to entitle it to recover the checks or their proceeds?

As to the first question, whether the title in the checks passed to the Maverick Bank, I am inclined to the opinion that it did. There are numerous decisions upon this general subject of the ownership of deposits in a bank which subsequently becomes insolvent, and each case seems to turn upon the particular facts underlying it. The question is one of fact, rather than of law. *Railway Co.* v. *Johnston*, 133 U. S. 566, 10 Sup. Ct. Rep. 390. If we take the simple case of a customer depositing a check with a bank, which immediately credits him with the amount, allowing him to draw against it if he wishes, this being the usual course of dealing between the parties, it would seem that the property in the check passes from the customer, and vests in the bank, though there is no express agreement respecting the transfer of checks so deposited to the bank. *Bank* v. *Loyd*, 90 N. Y. 530, affirming 25 Hun, 101. The supreme court in *Railway Co.* v. *Johnston, supra,* cite the following language from the above case, as reported in 25 Hun:

"That the intention that the check should be received as cash is to be inferred from the fact that the check was due immediately, and was drawn on a bank, and for all purposes of the parties was equivalent to so much money; * * * and such intention is confirmed by preceding transactions, admitted by the depositor, in which checks were deposited as cash in his bankbook, and that the custom of his bank in its dealings with him was to credit him with all checks as money."

*Railway Co.* v. *Johnston* was the case of a sight-draft, and Mr. Chief Justice FULLER, in the opinion of the court, after referring to this fact and other circumstances, such as the right to charge exchange and interest on large drafts taken for collection, says:

"This was not consistent with the theory of an understanding between the bank and the company that the title to this and similar drafts should pass absolutely to the bank."

The decision is finally made to rest mainly on the ground of fraud.

Taking all the allegations of the present bill upon this particular point to be true, I am inclined to the opinion that this case comes within the principle laid down in *Bank* v. *Loyd*, and that, if the bill contained no other allegations, the demurrer should be sustained.

But the bill further alleges that, when the checks were received by the Maverick Bank, "it was irretrievably insolvent, and made so by the operations of the president and two others of the directors." It also avers that the bank closed its doors within 15 minutes after this deposit was received. For the purposes of this demurrer, these allegations must be taken to be true. To receive a deposit under these circumstances (assuming these facts to be proved) would constitute such a fraud as would entitle the depositor to a return of his checks or their proceeds. *Railway Co.* v. *Johnston*, 133 U. S. 566, 10 Sup. Ct. Rep. 390; *Cragie* v. *Hadley*, 99 N. Y. 131, 1 N. E. Rep. 537; *Anonymous Case*, 67 N. Y. 598; *Martin* v. *Webb*, 110 U. S. 7, 15, 3 Sup. Ct. Rep. 428.

It is contended by the defendant that the bill should have alleged

knowledge on the part of the officers of the bank as to its insolvent condition at the time the deposit was received, in order to bring this case within the rule respecting fraud. But the bill alleges that the bank was irretrievably insolvent at the time the checks were received, through the acts of the president and two other officers. It must be presumed, therefore, that the officers knew the condition of affairs and the consequences of their own acts. Under these circumstances, it was not necessary to aver specifically that the officers had knowledge of such insolvency. Upon this ground the demurrer is overruled.