GOSHORN v. MURRAY.

(Circuit Court of Appeals, Third Circuit. February 10, 1914.)

No. 1790.

BANKS AND BANKING (§ 167*)—DEPOSITS—OWNERSHIP OF CHECKS—TRUST FOR COLLECTIONS.

Complainant deposited certain checks to the credit of his account in the bank of which defendant was appointed receiver, which checks the bank, before its failure, sent to its correspondents in the city, where the checks were payable. The checks were credited to the bank's account and drafts drawn against such account which, except for the checks, would not have been sufficient to have paid the drafts. *Held* that, though the checks, pending collection, remained in the hands of the bank as a trustee, with the right to charge them back in case of nonpayment, such relation ceased when the bank closed after collecting the checks and using a part of the proceeds, creating the relation of mere debtor and creditor between complainant and the bank, and hence complainant was not entitled to an accounting as against the bank's receiver on the theory that the checks never became the bank's property but were held by it for collection.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 579–582; Dec. Dig. § 167.*]

Appeal from the District Court of the United States for the Western District of Pennsylvania; James S. Young, Judge.

Bill by L. R. Goshorn against C. C. Murray, receiver of the Cosmopolitan National Bank, for an accounting of the proceeds of certain checks deposited by complainant with the bank immediately before it closed. Judgment for complainant (197 Fed. 407), and defendant appeals. Reversed.

John S. Wendt, of Pittsburgh, Pa., for appellant.
Lyon & Hunter, of Pittsburgh, Pa., for appellee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, Goshorn, the plaintiff, filed a bill in equity against Murray, receiver of the Cosmopolitan National Bank, praying an accounting for the proceeds of certain checks deposited by him with said bank immediately before it closed. The grounds of accounting were: First, that the receipt of such checks by the bank was alleged to be fraudulent in that the bank was then insolvent and such insolvency known to its officers; secondly, that such checks never became the property of the bank but were held in trust for collection. On final hearing, the court found against the plaintiff on the first contention and in his favor on the second. It subsequently entered a decree adjudging the receiver, in due course of administration, pay Goshorn the sum involved. Thereupon the receiver took this appeal.

As an examination of the testimony has not satisfied us that the court below committed error in its findings as to the first ground, viz., that of insolvency, we confine ourselves to the second ground above stated. From the proofs it appears that plaintiff, who was collector of delinquent taxes for the city of Pittsburgh, had a deposit account in the bank. On September 3, 1908, he indorsed in blank and deposited in the defendant bank certain checks and vouchers of the Pennsylvania Railroad Company on banks in Philadelphia in payment of its taxes for $96,469.21, and another check for $278.06, whereupon his deposit account was duly credited with said amounts, viz., $96,-747.27. The same day the bank forwarded the said checks and vouchers to Philadelphia for collection and credit; $50,363.17 going to the Third National, and $46,384.10 to the Southwark National Banks of that city. The Cosmopolitan had with each of these banks two accounts, one for collections, the other for deposits. These deposit accounts were used for the purpose of having funds in Philadelphia on which the Cosmopolitan could draw for the benefit of itself or its customers. On its account with the Southwark National Bank, the Cosmopolitan was paid interest. There is some dispute between counsel as to what followed, but in view of the fact that all of the checks remitted, save the small one noted, were drawn by the Pennsylvania Railroad Company on banks in Philadelphia, and in the course of business would all be paid on September 4th, we see no reason to question the finding of the court below:

"That on September 4th the Third National Bank of Philadelphia received the checks and vouchers, collected the same from the payers thereof and credited the checks and vouchers, or the proceeds thereof, respectively to the general deposit account of the Cosmopolitan National Bank."

On September 4th the Cosmopolitan drew a draft for $5,000 in favor of a third party on the Southwark Bank, and on September 3d drafts for $9,000, and September 4th drafts for $29,000, on the Third National Bank. At the close of business, therefore, on September 4th, the situation of the three banks with reference to the Goshorn checks was as follows: The Cosmopolitan Bank had on deposit in an interest-bearing account in the Southwark National Bank a credit of $51,-047.94, of which amount $46,384.10 was the proceeds of the checks deposited by Goshorn on September 3d. Against this credit the Cos-

210 F.—56

mopolitan had issued its outstanding draft of $5,000. With the Third National Bank the Cosmopolitan had on deposit in a noninterest-bearing account a credit of $63,528.33, of which amount $50,363.17 was the proceeds of checks deposited by Goshorn on September 3d. Against this credit it had issued outstanding drafts of $38,000. From these facts it follows: First, that, none of Goshorn's deposit having defaulted, the deposit made by Goshorn and credited by the bank was subject to no charging back; second, that the Cosmopolitan Bank had used said checks as its own and had received credit for their collected proceeds as a deposit; third, that it had drawn drafts against such established deposits, which drafts were not justified, save on the basis of the Cosmopolitan using the proceeds of the Goshorn checks as its own money to pay them. Under such facts and conditions, which was the status when the receiver took charge of the bank on the morning of September 5th, had the plaintiff a right to maintain this bill? If his status was that of depositor, clearly not, for the relation of a bank to a depositor is simply that of debtor and creditor. National Bank v. Millard, 10 Wall. 152, 19 L. Ed. 897. The right of a creditor to a mere money decree against the debtor for the amount of his debt affords no ground of support to a bill in equity for an accounting. The right to an accounting could only exist in this case if there was a trust relationship between the parties. Assuming, for present purposes, that these checks, when deposited and credited to the plaintiff, still, and pending collection, remained in the hands of the bank as a trustee with the right of charging them back in case of default, such relation assuredly had ceased to exist when the bank closed, by reason of the fact that the bank had not only collected the checks but it had used the collected proceeds as its own, deposited them in its own deposit account, and had exercised its ownership thereof by drawing drafts which could only be paid by using some part of such deposited proceeds. Assuredly, if these two Philadelphia banks had closed on the morning of September 5th, the loss of these proceeds would have fallen on the bank and not on the plaintiff. The whole case turns on the question of fact: What was the status and situation of Goshorn and the bank on the morning of September 5th? Clearly that relation was one of debtor and creditor, depositor and banker. It follows this bill to account cannot be maintained.

The decree below is therefore reversed, and the case remanded, with directions to dismiss the bill.