In re JARMULOWSKY et al. Petition of WILSON. Petition of BORTZ.

(Circuit Court of Appeals, Second Circuit. January 16, 1918.)

Nos. 114, 115.

1. COURTS ⬥⟹372(1)—FEDERAL COURTS—PRECEDENTS.
    On questions of general commercial law, the decisions of the state courts are not controlling in the federal courts, but the rules enunciated by the various national courts should be applied.

2. BANKS AND BANKING ⬥⟹127—CHECKS—DEPOSITS.
    In the absence of any special agreement between the depositors and a bank, title to checks deposited will pass to the bank, and it becomes merely a debtor for the amount thereof.

3. BANKS AND BANKING ⬥⟹159—DEPOSIT OF CHECKS—EFFECT.
    Whether there was any special agreement taking a deposit of checks out of the general rule, under which title would have passed to a bank and it would have become a debtor to the depositors for the amount thereof, is a question of fact.

4. BILLS AND NOTES ⬥⟹188—INDORSEMENT—EFFECT.
    Where checks deposited were indorsed in blank, any lawful direction might be written over the blank indorsement.

5. BANKS AND BANKING ⬥⟹165—COLLECTIONS—PROCEEDS.
    When a bank, collecting checks as agent for a depositor, gets the money on the checks, the relation of debtor and creditor arises.

6. BANKS AND BANKING ⬌166(2)—DEPOSIT OF CHECKS—EFFECT.

Where their passbooks provided that deposits of checks should not be drawn upon until collected, the checks so deposited belonged to the depositors until collection, even though they were indorsed in blank and commercial depositors were allowed to draw on deposits of checks, for the banker might have written any lawful direction above the blank indorsement, and the privilege in favor of commercial depositors, which was without consideration, might have been withdrawn at any time; so, where the checks were not collected until after a receiver took charge of the affairs of the banker, the depositors were entitled to the proceeds as against the receiver.

Petitions to Revise Orders of the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of Louis Jarmulowsky and Harry Jarmulowsky, doing business under the firm name and style of S. Jarmulowsky's Bank. The petitions of L. M. Wilson and Benjamin Bortz, which were opposed by Eugene Lamb Richards, as receiver in bankruptcy, were granted (243 Fed. 632), and the receiver petitions to revise. Affirmed.

The appellant in these causes, Mr. Richards, is at once superintendent of banks for the state of New York and receiver in bankruptcy of Jarmulowsky et al., who conducted business in New York City as bankers under the name of "S. Jarmulowsky's Bank." Pending these appeals adjudication has been entered, and for all practical purposes Mr. Richards may be regarded as the trustee in bankruptcy. On May 11, 1917, the superintendent of banks took possession of Jarmulowsky's Bank pursuant to the statutes of New York, because in his opinion there existed an impairment of capital and an insufficient reserve. On the same day a petition in bankruptcy was filed against the Jarmulowskys.

Quite as much from the admissions or statements of the parties as from a meager and ill-prepared record, we find that on May 10, 1917, Bortz deposited in the bank two checks, aggregating $304.90. One of these was plainly an out of town check; the other was apparently local—i. e., drawn against some bank in the city of New York. On the same May 10th Wilson similarly deposited two Philadelphia checks, aggregating $354. Both depositors indorsed their checks in blank and received credit (i. e., the checks were not entered "short") in their passbooks for the face of the checks, and both their passbooks contained the following notice: "Deposits of currency or coin may be drawn against after deposit, but deposits of checks shall not be drawn against until collected." The checks aforesaid, with many others, were by the Jarmulowskys redeposited to their own account in sundry chartered banks of this city, and all were in time duly collected; but (as is admitted) such collection had not been made when Mr. Richards, at the opening of business on May 11th, took possession of the bankrupts' bank.

The receiver introduced evidence to the effect that Bortz had a so-called "commercial" account with Jarmulowsky, and that as a depositor of that kind he had been permitted to draw against uncollected checks, notwithstanding the passbook notice aforesaid. As to Wilson, he introduced no such evidence. There is no other difference between the two causes; it being admitted that both as to Bortz and Wilson it was understood that the bank had perfect right to summarily charge back and against the depositor's account any check not collected on presentation, notwithstanding the apparent credit of the passbook or the privilege extended to commercial depositors like Bortz.

On these facts and admissions the District Court entered orders requiring Mr. Richards, as receiver, to pay over to the petitioners, respectively, what he had received out of the check collections above described, and thereupon the receiver took these appeals.

⬌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Koenig, Goldsmith & Sittenfield, of New York City (Milton M. Sittenfield and Solomon Selig, both of New York City, of counsel), for Richards as receiver.

Virginius Victor Zipris, of New York City (Norman M. Behr, of New York City, of counsel), for Bortz and Wilson.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] In this matter of general commercial law it is our duty to apply the rules enunciated by the Supreme and other courts of the United States; we are not controlled by state decisions. Railroad Co. v. National Bank, 102 U. S. 14, 26 L. Ed. 61, reaffirming Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865.

[2] In the absence of any special agreement between these depositors and their bank, the title to the checks would have passed to the bank, and the bank become merely a debtor to the depositor for the amount entered in the passbook. Burton v. United States, 196 U. S. 297, 25 Sup. Ct. 243, 49 L. Ed. 482, approving Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537, 52 Am. Rep. 9.

[3-6] Whether there was any other or special agreement made is a question of fact. St. Louis & San Francisco R. R. Co. v. Johnston, 133 U. S. 566, 10 Sup. Ct. 390, 33 L. Ed. 683. On the facts above stated the evidence making for an absolute ownership of the checks by the bankrupts is the entry of full credit in the passbook and the fact that the depositors indorsed in blank; but it is to be noted, as they did not indorse either, "For deposit" or "For collection," nor indorse specially, the Jarmulowskys might have written any lawful direction over the unrestricted signatures of the depositors. It is said, also, that in the case of Bortz the privilege of checking against such deposits as the one in question tends to show that the bankrupts became the absolute owners of the checks. On the other hand is the notice in the passbook which undoubtedly constituted part of the original contract between banker and depositor.

We regard the fact that the depositors' indorsements were in blank of no importance, since any indorsement (at least) consistent with the original intent of the parties might have been written thereover. Nor do we think the privilege said to have been extended to "commercial" depositors like Bortz affords any guide to decision. It was a privilege, a favor, without consideration; it could have been retracted at any time, and cannot, therefore, be held to show any change in the legal relation assumed by the parties when petitioners became depositors in bankrupts' institution.

Therefore both of these proceedings present the same question, which is whether a depositor who is credited with the face of checks, which he has agreed not to draw against until they shall have been collected, has by the act of deposit parted with the title to the checks in question or other such negotiable paper. It is obvious (and is indeed admitted) that unless there was such parting with title the relation of the bank to the depositor in respect of such collectible items is that of agent. Of course, if the agency had been fulfilled by collection of the checks be-

fore May 11th, no such question could be presented, for the moment the bank got money on the checks the relation of debtor and creditor arose. Goshorn v. Murray, 210 Fed. 880, 127 C. C. A. 464.

But here, when petition was filed and the bank superintendent took possession, the agency (if it existed) was terminated before collection effected, and the depositors can follow their own property or its proceeds wherever they can find it, in the absence of supervening superior rights. If these petitioners had indorsed their checks "For deposit" and received full credit therefor, the decision of Putnam, J., in Beal v. City of Somerville, 50 Fed. 647, 1 C. C. A. 598, 17 L. R. A. 291, would entirely cover the case. And it is our opinion that what the parties. here meant was to create as to everything but cash the relation of principal and agent. This inference we draw from these undisputed facts: No depositor had any right (as distinct from an occasional and gratuitous privilege) to draw against anything but cash; this arrangement was advantageous to the bank; and the right to summarily charge back uncollected items, even after full apparent credit on deposit, is thought inconsistent with any intent on the bank's part to become the owner of such items as those under consideration.

We conclude, therefore, that the course of business shown herein is in effect the same as though the checks aforesaid had been specifically indorsed "For collection and deposit to the account of" the depositors. If this had been done, the situation would be too clear for argument. See Morse on Banking (5th Ed.) § 587.

The orders appealed from are therefore affirmed, with one bill of costs, to be taxed in the Case of Wilson.