## GEORGE FORSYTHE v. FIRST STATE BANK OF MENTOR, BY J. N. PEYTON.[1]

February 5, 1932.

No. 28,625.

[1]Reported in 241 N. W. 66.

256

 

*John H. Hougen,* for appellant.
*F. A. Grady,* for respondent.

WILSON, C. J.

Defendant appealed from an order denying its motion for a new trial.

Plaintiff made deposits in defendant bank between November 22, 1928, and November 28, 1928, inclusive, aggregating $2,339.02. The bank closed on November 30, 1928. Plaintiff sought to have his claim allowed as a preferred claim, but the commissioner of banks allowed it as a general claim only. In this action which followed, the court found for the plaintiff.

█ It is the law that where a deposit is made in a bank which is hopelessly insolvent. to the knowledge of the bank the ordinary relation of debtor and creditor does not arise. In such a transaction a fraud is perpetrated upon the depositor which avoids the implied contract between the parties that would arise making them debtor and creditor in the absence of such fraud, and a trust is the equitable result. It is a trust ex maleficio. The fraud prevents the money from becoming the property of the bank. The result is a trust fund as much so as if it had been a special deposit. Barnard v. Black, 91 Ind. App. 283, 169 N. E. 872; Richardson v. New Orleans D. R. Co. (C. C. A.) 102 F. 780, 52 L. R. A. 67; Raynor v. Scandinavian-Am. Bank, 122 Wash. 150, 210 P. 499, 25 A. L. R. 716; Brennan v. Tillinghast (C. C. A.) 201 F. 609; Marvin v. Martin (C. C. A.) 20 F. (2d) 746; Holloway v. Dykes (D. C.) 29 F. (2d) 430; Wasson v. Hawkins (C. C.) 59 F. 233; Anno. 20 A. L. R. 1206; 3 R. C. L. 471; Anno. 25 A. L. R. 728; Washington Shoe Mfg. Co. v. Duke, 126 Wash. 510, 218 P. 232, 37 A. L. R. 611; Anno. 37 A. L. R. 620; St. L. & S. F. Ry. Co. v. Johnston, 133 U. S. 566, 576, 10 S. Ct. 390, 33 L. ed. 683. This doctrine seems to have been recognized in

Brusegaard v. Ueland, 72 Minn. 283, 75 N. W. 228. The fraud gives no lien, but it prevents the money of the depositor from becoming the property of the bank, and thereby prevents the relation of debtor and creditor arising between the parties. Because of the fraud the money remains the property of the depositor; hence the trust fund.

The right of the owner to follow his money into the hands of the bank receiving it formerly depended upon his ability to identify it; but the modern rule is that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority right over the general creditors of the bank. Blythe v. Kujawa, 175 Minn. 88, 220 N. W. 168, 60 A. L. R. 330; Eastman v. Farmers State Bank, 175 Minn. 336, 221 N. W. 236; Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 33 L. ed. 696; City of Lincoln v. Morrison, 64 Neb. 822, 90 N. W. 905, 57 L. R. A. 885; Hudspeth v. Union Tr. & Sav. Bank, 196 Iowa, 706, 195 N. W. 378, 31 A. L. R. 466; First Nat. Bank v. Hummel, 14 Colo. 259, 23 P. 986, 8 L. R. A. 788, 20 A. S. R. 257.

■ Joseph Tagley for more than 15 years next prior to the closing of the bank was the president and was during all of said time the sole active manager thereof. He owned 94 per cent of the capital stock, his wife owned three per cent thereof, while the other three per cent was owned by another.

It was stipulated, and the court found as a fact, that for ten days immediately before the bank closed it was insolvent; and that the officers and directors had good reasons to know and should have known of such insolvency from and after November 22, 1928, down to the time of the closing of the bank. Upon such finding the court applied the rule of law above stated and awarded plaintiff a preferred claim.

It is urged on the appeal that the court's conclusion is not supported by such facts, in that there is no finding that the bank was at the time "hopelessly insolvent" and that there is no finding that the officers of the bank had actual knowledge of insolvency.

The president of the bank received the deposits. For a bank to be "hopelessly insolvent," as that term is used in the books, means

to be irretrievably insolvent. Liability under the rule stated rests upon hopeless insolvency and actual knowledge thereof on the part of the bank. St. L. & S. F. Ry. Co. v. Johnston, 133 U. S. 566, 576, 10 S. Ct. 390, 33 L. ed. 683. Knowledge of the president would be knowledge of the bank.

The cases make a distinction between known irretrievable insolvency and where there is insolvency accompanied by reasonable hopes that by continuing the business fortune may be retrieved. St. L. & S. F. Ry. Co. v. Johnston, 133 U. S. 566, 576, 10 S. Ct. 390, 33 L. ed. 683; Washington Shoe Mfg. Co. v. Duke, 126 Wash. 510, 218 P. 232, 37 A. L. R. 611. If the former, the receipt of the deposit is a fraud. In this state the acceptance of the deposit by an officer when he knows or has good reason to know that the bank is unsafe or insolvent constitutes a felony. G. S. 1923 (2 Mason, 1927) § 10407. But here the claim is against the bank, and the rule stated sounds in fraud and is not dependent upon the statute. The violation of the statute would be an additional element pointing toward liability, but this action can hardly be said to rest thereon. It is doubtful if even an ordinary trader, who is to his own knowledge hopelessly insolvent, could take advantage of credit extended to him because of his apparent prosperity and obtain property for which he has every reason to believe he cannot pay. Anyway, the rule should apply with greater rigor against a bank where confidence is sought and reposed and where dishonest dealings may cause widespread disaster.

"A banker who is, to his own knowledge, hopelessly insolvent, cannot honestly continue his business and receive the money of his customers; and although having no actual intent to cheat and defraud a particular customer, he will be held to have intended the inevitable consequences of his act, i. e., to cheat and defraud all persons whose money he receives, and whom he fails to pay before he is compelled to stop business." Anonymous case, 67 N. Y. 598.

In Steele v. Commr. of Banks, 240 Mass. 394, 397, 134 N. E. 401, 402, 20 A. L. R. 1203, the expression of "hopelessly insolvent" and "simple insolvency" are distinguished; and it is there stated relative

to the former as a basis of establishing a trust fund that the facts must establish the conclusion that the bank accepted the deposit knowing, through its officers, that it would not and could not pay the money when demanded by the depositor.

The rule requiring proof of "hopeless insolvency" and knowledge thereof finds much support upon principle and authority. See Anno. 20 A. L. R. 1206, 1210, wherein at page 1213 we find:

"And where a bank is as a matter of fact insolvent at the time a deposit is received, but such fact is not actually known to its officers, and the circumstances are not such as to charge them with constructive notice thereof, the receipt of the deposit does not work a .fraud, and the depositor cannot reclaim the deposit, but must stand with other depositors. Goshorn v. Murray (D. C. 1912) 197 Fed. 407, reversed on other grounds in (1914) 127 C. C. A. 464, 210 F. 880; Balbach v. Frelinghuysen (C. C. 1883) 15 F. 675; Terhune v. Bank of Bergen County (1881) 34 N. J. Eq. 367; Perth Amboy Gaslight Co. v. Middlesex County Bank (1900) 60 N. J. Eq. 84, 45 A. 704; People v. St. Nicholas Bank (1894) 77 Hun, 159, 28 N. Y. S. 407; People v. St. Nicholas Bank (1894) 77 Hun, 611, 28 N. Y. S. 421; People v. St. Nicholas Bank (1894) 77 Hun, 611, 28 N. Y. S. 421; People v. St. Nicholas Bank (1894) 77 Hun, 611, 28 N. Y. S. 422; People v. St. Nicholas Bank (1894) 77 Hun, 611, 28 N. Y. S. 422; People v. St. Nicholas Bank (1894) 77 Hun, 611, 28 N. Y. S. 423; Stapleton v. Odell (1897) 21 Misc. 94, 47 N. Y. S. 13; Williams v. Cox (1896) 97 Tenn. 555, 37 S. W. 282 (on rehearing in (1897) 99 Tenn. 403, 42 S. W. 3)."

In Howe v. Akron Sav. Bank Co. 16 Ohio C. C. (N. S.) 320, it is expressly held that to sustain a charge of such fraud it is not sufficient that the bank officials knew or by the exercise of ordinary care and diligence might have known of the insolvency of the bank. It is said that the rule cannot rest upon the basis that fraud exists if it can only be said that the bank officials might have known of the insolvency. Their knowledge cannot be presumed, it must be proved.

The acceptance of a deposit by a bank is a representation of solvency. If it be "hopelessly insolvent" to its own knowledge and receives deposits, it is the equivalent of a preconceived purpose not to pay and is a fraudulent act. On the contrary, simple insolvency, under the circumstances wherein the officers have reasonable cause to know and should know of the insolvency, does not warrant a rescission of the deposit if there is genuine and reasonable hope, expectation, and intention on the part of the officers of the bank to carry on its business and to recover sound financial standing.

To invoke the rule plaintiff must prove hopeless insolvency, irretrievable insolvency, and knowledge thereof on the part of the management. This is essential to establish the resultant fraud. Hopeless insolvency refers to insolvency of such character that it is manifestly impossible for the bank to continue in business and meet its obligations; and that fact must be known to the officials so as to justify the conclusion that the deposit was accepted knowing that they would not and could not respond on demand of the depositor. It is fraud that is to be proved, not an honest mistake which would negative the conclusion of fraud upon which plaintiff's cause of action must depend.

Upon the record before us the findings of fact do not determine that the bank was hopelessly insolvent and do not disclose that the bank through its president actually knew that the bank was hopelessly or irretrievably insolvent.

The memorandum of the trial court indicates that the officers were still hopeful but that their hope was "illusory." We are not certain as to what the trial court's findings would be upon the two essentials which we have discussed and which might have been made definite by a motion for amended findings, and we have reached the conclusion that there should be a new trial so that the two elements of fact which we have discussed may be definitely determined.

There is some authority to the contrary wherein the irretrievable insolvency is the direct result of the act of the particular banker. City of Somerville v. Beal (C. C.) 49 F. 790; Beal v. City of Somer-

ville (C. C. A.) 50 F. 647, 17 L. R. A. 291; see also In re Silver (D. C.) 208 F. 797.

Reversed.

LORING, J. took no part.

