THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., OF
LONDON, ENGLAND, Plaintiff, *v.* THE HUDSON RIVER TRUST
COMPANY, Defendant.

HERBERT HALL, as Receiver of THE GERMANTOWN NATIONAL
BANK, Plaintiff, *v.* THE HUDSON RIVER TRUST COMPANY,
Defendant.

Supreme Court, Trial Term, Columbia County, June 8, 1936.

*Ainsworth & Sullivan* [*Charles B. Sullivan* and *Warner M. Bouck* of counsel], for the plaintiff The Employers' Liability Assurance Corporation, Ltd., of London, England.

*Gibboney & O'Brien* [*Stuart G. Gibboney* of counsel], for the plaintiff Herbert Hall, as receiver of The Germantown National Bank.

*John V. Whitbeck Jr.* [*Robert E. Whalen* of counsel], for the defendant.

FOSTER, J. Clyde DeWitt was county treasurer of Columbia county from January 1, 1928, to December 31, 1930. Between July 7, 1928, and October 20, 1930, he wrongfully withdrew from the general fund account on deposit in the Germantown National Bank various sums aggregating $87,000, and misappropriated the same. Among these items were eleven checks, totalling $33,000, which were drawn upon the county depository, payable to DeWitt personally or to cash, signed by him as county treasurer, and deposited in the defendant trust company to his personal account. In each instance the trust company permitted him to draw funds against said checks before the same cleared, that is, before they were paid by the Germantown National Bank.

The Employers' Liability Assurance Corporation was surety on the official bond of DeWitt, and reimbursed the county in the sum of $23,914.86. It is now subrogated to the claim of the county and seeks to recover from the defendant that portion of its loss which it has been unable to recover from the receiver of the Germantown National Bank, to wit, the sum of $10,508.88, with interest on $25,021.13 from September 20, 1932.

The plaintiff receiver seeks to recover the total amount represented by the checks involved, or, if it should be held that the bank is liable but that the plaintiff surety is entitled to a preference over other creditors of the Germantown National Bank, then this plaintiff seeks judgment for the difference between $33,000 and the claim of such plaintiff surety.

The brief recital in the opening paragraph of this memorandum contains the essence of the case. While some claim seems to be made that the defendant had actual knowledge of DeWitt's peculations, the record is devoid of any such proof. The mere fact that the proceeds of the checks in question were deposited to his personal account was neither legal or actual notice of diversion. (*Whiting* v. *Hudson Trust Co.*, 234 N. Y. 394.) Aside from any legal aspect of the matter it seems rather incredible that the trust company would knowingly become a party to defalcations by a public official where it had not the slightest incentive by way of benefit to itself; and the conceded fact that DeWitt withdrew the major portion of the funds in each instance before his checks cleared negatives the theory of any practical benefit inuring to the defendant. This procedure, by which the trust company acted merely as a conduit, in no way strengthened its position with relation to any other transactions with DeWitt, and the proof fails to show that any of the proceeds sought to be recovered went to pay any of DeWitt's obligations to the bank, excepting of course, for the moment, the overdraft or loan theory advanced by the plaintiffs.

Section 147 of the County Law, which provides in substance that the county treasurer shall draw moneys only for the payment of claims ordered to be paid by the board of supervisors, or other lawful authority, or salaries, is invoked by the plaintiffs to indicate that the defendant was charged with notice as a matter of law that the checks offered for deposit were illegal in their inception. This theory carries the determination of liability too far. The defendant had no official relationship to the county, and no concept of banking practice, dictated even within the limits of authorities cited, required it to investigate as to whether the board of supervisors had audited the amount of each check, or more burdensome still, to determine whether such check represented a claim prescribed by " other lawful authority," to use the blanket phrase of the statute. Manifestly such a situation is wholly different, both factually and legally, from that passed upon in *Fidelity & Deposit Co.* v. *Queens Trust Co.* (226 N. Y. 225), where a specific order in bankruptcy with reference to signatures, and promulgated by the Supreme Court of the United States, had been violated.

There is a vast difference between a precise direction as to signatures and the general language of a statute. Moreover, as the checks were continuously honored by the Germantown National Bank, the defendant had every reason to believe that they were valid in their origin. Neither actual nor constructive notice of diversion can be predicated upon such a situation. (*First National Bank* v. *Hudson,* 166 App. Div. 51; *Havana Central R. R. Co.* v. *Knickerbocker Trust Co.,* 198 N. Y. 422.)

As to the ordinary fiduciary relationship, the authorities seem unanimous in holding that, in the first instance, the bank has a right to assume that the trustee is honest (*Newton* v. *Livingston County Trust Co.,* 231 App. Div. 355; *Bischoff* v. *Yorkville Bank,* 218 N. Y. 106; *Clarke* v. *Public National Bank & Trust Co.,* 259 id. 295), and apparently this is so even with a public official. (*Town of Eastchester* v. *Mount Vernon Trust Co.,* 173 App. Div. 482.) The facts of this case do not warrant a different ruling. There is not the slightest evidence to indicate that the defendant had any knowledge as to why the checks were drawn or for what purpose the funds were to be used, but such lack of knowledge does not constitute notice of diversion, nor did the absence of such knowledge require the defendant to inquire of DeWitt as to what he proposed to do with the money. (*Clarke* v. *Public National Bank & Trust Co., supra.*)

There remains the theory that because the defendant permitted DeWitt to withdraw funds before the checks had cleared, such transactions were in effect loans. Certainly they were not loans in the ordinary sense, whereby the defendant would expect to receive benefit by way of interest. Without recourse to technical considerations, this procedure on the part of the trust company can only be logically viewed as a privilege extended without consideration, and revocable at will. There is respectable authority to sustain this view. (*Matter of Jarmulowsky,* 249 Fed. 319; *Balbach* v. *Frelinghuysen,* 15 id. 675.) Obviously, the defendant honored the checks in question in each instance in the confidence and belief that they would be paid. Liability may be predicated against a bank where it receives a direct benefit by payment from the trustee, but this rests upon the basis of notice that the trustee is using the funds for his own personal use. There is a substantial difference between notice of such character and that sought to be inferred here on the theory of overdrafts or loans. The rule of liability stated ought not to be so narrowly construed as to destroy the reason for its existence, and it is only by carrying a technical construction to the extreme that a benefit can be found accruing to the defendant from the privilege it extended.

There is another factor, however, which nullifies whatever force might be given to the loan theory, tenuous as that may be. DeWitt's checks were not honored because they were deposited with the defendant, but because of some arrangement he must have had with the Germantown National Bank. The inference may be fairly drawn, in fact it is almost irresistible, that they would have been so honored if he had presented them directly to his own bank. Thus, the privilege of drawing upon them before they cleared was of no particular significance or assistance in his contemplated diversions.

As indicated by the foregoing the plaintiffs have failed to prove that the defendant had actual or constructive knowledge of DeWitt's diversions; or that it participated in them to its own profit. The defendant, therefore, may have judgment dismissing the complaint in each action.

Objections which were made to certain testimony offered and upon which decision was reserved are overruled; it being my view, after an examination of the case, that nothing substantial is involved thereby. An exception may be entered in the record in favor of all parties to this blanket ruling.