## In re UNION FOOD STORES CO.

## KING v. NIMLOS.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1925.)

### No. 3429.

1. **Bankruptcy ⬅212—Petitioner for possession of property transferred to bankrupt had burden of proving his right to possession or to an accounting.**

Receiver of corporation, which had transferred its assets to bankrupt corporation in consideration of bankrupt corporation's assumption of first corporation's debts, had burden of proving his right to possession of such assets or to an accounting in such bankruptcy proceedings.

2. **Corporations ⬅583—Consent of every stockholder not necessary to transfer of assets to other corporation.**

Consent of every stockholder was not necessary to transfer of corporation's assets to other corporation, on other corporation's assumption of first corporation's debts.

3. **Corporations ⬅574—Stockholders estopped to disavow reorganization plans, as against creditors of newly organized corporation.**

Where corporation was reorganized with approval of Securities Division of Railroad Commission of Wisconsin, by organization of new corporation, to take over its assets and to assume its debts, and where assets of first corporation were transferred to the newly organized corporation, stockholders of first corporation were estopped to disavow reorganization plans, as against creditors of newly organized corporation.

4. **Bankruptcy ⬅140(1)—Unsecured creditors of corporation, which had transferred assets to bankrupt corporation in consideration of bankrupt corporation's assumption of debts, held not entitled to return of property.**

Where corporation transferred assets to other corporation, in consideration of other corporation's assumption of first corporation's debts, and other corporation in fact satisfied a large portion of first corporation's debts, and where such action on part of first corporation was not ultra vires, the remaining unsecured creditors of first corporation could not require trustee in bankruptcy of other corporation to turn back such assets, without offering to repay to second corporation amount paid by it in satisfying first corporation's debts; the only remedy of such remaining creditors being to file their claims in the bankruptcy court.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

In the matter of the Union Food Stores Company, bankrupt, in which Henry R. King, as receiver of the Waukegan Tea Company, filed a claim with Thomas H. Nimlos, trustee in bankruptcy of the Union Food Stores Company. From an order disallowing the claim, claimant appeals. Affirmed.

Appellant and appellee are contestants for assets possessed by appellee shortly after his appointment and qualification as trustee of the estate of Union Food Stores Company, herein called for brevity, the Food Company. The Waukegan Tea Company will be referred to as the Tea Company. The facts are involved, many are difficult of ascertainment, and not easy to narrate in a brief and satisfactory statement.

The Tea Company was a Wisconsin corporation, organized May 9, 1919, to conduct a chain of grocery stores, with a capital stock of $100,000, which on January 20, 1920, was increased to $300,000; $100,000 being common, and the balance preferred. The volume of its business was large, and offered opportunity for growth, but its basic soundness was at all times doubtful. Careless bookkeeping and inaccurate statements best served the real purpose of the officers and promoters, which was to enrich themselves through promotion management.

The Food Company was organized in the summer of 1921, upon a capitalization in keeping with the plans of the promoters, there being 200,000 shares of preferred stock of $10 each, and 20,000 shares of common stock at no par value. It was organized to become the successor of the Tea Company. The reorganization plan contemplated that the outstanding stock in the Tea Company should be exchanged for the preferred stock of the Food Company, and the obligations of the Tea Company were to be assumed by the new company, and when this was accomplished the Tea Company was to be dissolved. The officers and directors of the Tea Company were the promoters, and subsequently, in large part, the officers and directors, of the Food Company.

A profit and loss statement of the Tea Company from January 1 to November 1, 1921, shows the character of the enterprise. The business for this short period was conducted at a loss of $321,539.81. Its total assets at that date were put at $635,509.46. The bookkeeper very briefly and aptly described both the financial condition and the character of the management. He said:

"On October 31, 1921, I was instructed to prepare trading and profit and loss statement of the Waukegan Tea Company, and I prepared such a statement, which has been introduced in evidence here as Exhibit 64. It shows a net operating loss of $321,-539.81, and on the same date I prepared

a financial statement of the Waukegan Tea Company, introduced in evidence as Exhibit 65, showing a surplus on account of revaluation. I couldn't tell just what the purpose of that surplus was. I couldn't read their minds. I presume it was for the purpose of wiping out that operating loss. That condition of the company on October 31st was such that the officers revised some of the assets; that is, the real estate was revised (upwards) to the extent of $90,000, store fixtures $15,161.16, good will $30,000. A donation of common stock of $100,000 and preferred stock of $80,000 was made. These items were instrumental in creating surplus as of November 1st in the amount of $10,-373.82."

Notwithstanding this showing, semiannual dividends were thereafter regularly paid.

The Food Company succeeded in selling a large amount of its stock, and some $230,-000 received therefrom was used in paying obligations of the Tea Company and in operating the business. The Food Company, either by cash payment or assumption of obligations, reduced the obligations of the Tea Company to the extent of $407,000. Until the necessary exchange of stock from the Tea Company to the Food Company was completed, and the obligations of the Tea Company met through the Food Company's sale of stock or assumption of liability therefor, it was agreed that the business of the Food Company and the Tea Company should be operated as a joint enterprise. The articles of association of both corporations provided that their powers should be in part as follows:

"To enter into partnership or into any arrangement for sharing profits, union of interest, co-operation, joint adventure, reciprocal concession, or otherwise, with any person or company carrying on or engaged in, any business or transaction which this company is authorized to carry on or engage in, or any business or transaction capable of being conducted so as directly or indirectly to benefit this company."

The plan of reorganization and joint operation of business by the two companies was embodied in the minutes of the meeting of the board of directors of the Union Food Company, a copy of which is set forth below:

"Whereas, this company intends to eventually, and as soon as practicable, take over the business of said Waukegan Tea Company (that is, as soon as its outstanding indebtedness is liquidated, so as to enable such business to be taken over without in-

3 F.(2d)—47

curring the penalties attaching by reason of such Bulk Sales Law), and to thereupon dissolve the corporation known as Waukegan Tea Company, and to conduct the business formerly conducted by it under the name of this company, or, if deemed necessary, under the trade-name of Waukegan Tea Company:

"Now, therefore, for the purpose of carrying out the objects as hereinbefore set forth, be it resolved:

"That all purchases, expenses, and disbursements necessary to be made or incurred to continue to carry on the business of said Waukegan Tea Company subsequent to October 29, 1921, be made or incurred in the name of this company, this company to assume liability therefor, and charge said Waukegan Tea Company on its books for merchandise so purchased and expenses so incurred, the object being that in due course this company shall become the sole creditor of said Waukegan Tea Company.

"That the officers of this company from time to time report to the stockholders the progress of such liquidation and advise the Securities Division of the Railroad Commission of the general object of the business being conducted by said two corporations, and that said officers in all respects comply with the requirements that may from time to time be imposed by the director of such Securities Division."

This proposed plan of reorganization was approved by the Securities Division of the Railroad Commission of the state of Wisconsin, and a permit was issued to the Food Company to sell its stock. A large amount of stock was thus sold, and the business, while conducted in part by each company, after November 1st became more and more the business of the Food Company. Dividends were paid December, 1921, and July, 1922, to the stockholders of each company, but upon checks drawn by the Food Company, which were stamped "Food Company Dividend Checks."

From the sale of stock, and by a shifting of liability, outstanding obligations of the Tea Company to the extent of $407,000 were paid. Certain real estate in Milwaukee in which the Tea Company possessed an equity was conveyed to the Food Company. In response to an inquiry from one of the creditors the general manager wrote:

"I am in receipt of yours of the 3d inst., in regard to how the bills to our firm should be charged. They should be billed Union Food Stores Company, Successors to Waukegan Tea Company, as both corporations

are in existence. Hoping this will give you the desired information, we remain yours very truly, Union Food Stores Company, Successors to Waukegan Tea Company, ————, General Manager."

The referee found that the Tea Company was not entitled to have "any of the property or assets now in the possession of the trustee in bankruptcy turned over to the state court for administration, but the property and assets here before the court for administration shall be distributed to the creditors' of Waukegan Tea Company—Economy Grocery and Union Food Stores Company without preference."

The District Judge, on reviewing the referee's finding and order, ruled:'

"I doubt whether, in view of the petitioner's claim to have assets turned over to him, the referee should, at this state of the proceedings, broadly decree ratable distribution, in the absence of any issues tendered by particular creditors of either company. When all the claims have been filed, and opportunity afforded to particular creditors, any question of priority may be then determined, but upon the present petition—especially in view of denial of the fundamental relief sought—questions properly presentable by individual creditors should not be embarrassed in their determination by the broad ruling above. Therefore the affirmance of the referee's order will be deemed coupled 'with a reservation of full right in the future to determine particular questions of priority or preference as they may arise.' "

Because the Food Company has paid or assumed a large portion of the Tea Company's liabilities existing at the time of the reorganization, and the balance of the obligations of the Tea Company are relatively small, and inasmuch as the obligations of the Food Company have become relatively large, it is to the interest of the Tea Company to have the property administered ·for the benefit of its creditors separate from the administration of the estate for the benefit of all creditors. The contest is therefore one between groups of creditors.

Albert K. Stebbins and Otto Dorner, both of Milwaukee, Wis., for appellant.

Leon F. Foley, of Milwaukee, Wis., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge (after stating the facts as above). Appellant's reclamation proceeding was to recover all of the property turned over to appellee by appellant at the time of the reorganization. In his petition appellant alleges:

"That * * * on the 1st day of July, 1921, * * * said Union Food Stores Company entered into possession ˘of, and converted to its own use, unlawfully, and, as your petitioner is informed and believes and alleges the fact to be, without˙ the knowledge or consent of any of the preferred stockholders of said Waukegan Tea Company, all of the assets, cash, credits, and effects of said Waukegan Tea Company, * * * and that said Union Food Stores Company thereupon took over the management of all of the said stores."

Upon appellant's own theory, then, the trustee in bankruptcy, upon the adjudication of the Food Company as a bankrupt, lawfully came into possession of the real and personal property here the subject of litigation, and should administer the estate, unless appellant can satisfy this court that the estate or some part of it should be returned to him.

Upon oral argument it was urged that the hearing had broadened the issues, and appellant, if denied possession of the property should at least be awarded an accounting. We approach the question from the standpoint of (a) the common stockholders of the Tea Company; (b) the preferred stockholder of the Tea Company; (c) the creditor of the Tea Company. Appellant asserts that he represents them all.

[1] The evidence, due to the hopeless confusion that existed in the affairs of these companies, is not as satisfactory as it might be. But, inasmuch as the petitioner carries the burden of proving his right to possession of the goods, or to an ·accounting, he must rely upon the record as presented. Without detailing all of the evidence that supports our conclusion, we will merely say that we find all the common stock of the Tea Company had been surrendered before the plan of reorganization was approved by the Securities Division of the Railroad Commission of Wisconsin. There is no holder of common stock interested in this controversy.

The situation in reference to the preferred stockholders is not so clear. We conclude, however, that on the occasion of the hearing before the state authorities above referred to, when permission to sell the stock in order to carry out the plan of reorganization was granted to the Food Company, the preferred stockholders acquiesced in or were bound by the action of the officers and agents of the Tea Company, and cannot now com-

plain. A part of the preferred stock was surrendered. General Manager Berry, a director in both companies, testified:

"The Union Food Stores Company was organized about July 1, 1921, and was on that date licensed to transact business. It started selling stock and operated its stores as fast as it could get the required allotment in each town. They got the money for the stores they conducted from the stock sold. They started new stores, and also operated the Waukegan Tea Company stores. They did not take over the Waukegan Tea Company. They operated some stores. For a while they kept books separately. I could not recall how many of the Waukegan Tea Company stores were taken over the 1st of July. I do not know whether they took over any at that time. The records would show that. They were supposed to be in charge of the stores on November 1, 1921. That was the time they were supposed to take over the stores previously operated by the Waukegan Tea Company; that is, between July 1st and November 1st the Union Food Stores Company took over the stores previously operated by the Waukegan Tea Company and continued to operate them. In taking over the stores, they took over all of the merchandise that was in the stores, the shelving and counters and fixtures and apparatus, such as scales, etc. The Union Company assumed ownership and control. My stock and that of the other gentlemen who were directors was transferred. I do not recall the date. After that there was no new election of directors of the Waukegan Tea Company, nor of officers. I became a director of the Union Food Stores Company."

[2, 3] In appellant's brief the names of three and possibly four small preferred stockholders are given, and it is asserted that they never consented to the transfer of assets. As to them, it is sufficient to say (a) that their consent was not necessary; (b) that they are estopped to disavow the reorganization plans; and (c) their nonconsent is not satisfactorily established.

As the District Judge briefly stated: "When, as further appears, this situation continues, month after month, and with the sanction of the corporate articles and the state tribunal above adverted to, the shareholders of neither company should be heard to urge, against innocent creditors of either, that because the ordinary formal corporate assent to a transfer is not shown, the situation should not be found and dealt with as the referee determined."

Moreover, in view of the facts as disclosed by this record, neither the common stockholders nor the preferred stockholders are interested in this controversy. The Tea Company was insolvent in July, 1921, and its insolvency became more pronounced thereafter. The Food Company was at the time of its adjudication hopelessly insolvent. Only the creditors of the two companies are in fact interested.

Approaching the controversy from the standpoint of the creditor, we find the outstanding obligations of the Tea Company on November 1, 1921 to be $484,735.18. For the previous 10 months it showed an operating loss of $321,000. The Food Company, after November 1st, paid (or had the obligations transferred to it) on these outstanding obligations $407,240.89. This would leave a balance of approximately $77,500 unpaid obligations of the Tea Company. But $63,000 of this sum was the unpaid purchase price of certain real estate in Milwaukee, the purchase price being $100,000. The vendor is secured, and this indebtedness must ultimately be paid by appellee, or the property lost. The remaining creditors, save one, were closely connected with the company, and must have known of the reorganization plans, and must have acquiesced in their consummation.

[4] But, if we assume that there is one or more unsecured creditor of the Food Company who is in a position to assert his rights, he cannot, without offering to do equity, seek the relief here sought by the receiver. That the Food Company, having relieved the Tea Company of over $400,000 of its debts, shall now be required to turn back the assets by it received as a consideration for such assumption of liability, because, perchance, the officers and directors of the Tea Company did not, before acting, obtain the consent of the stockholders (though they held or represented practically all of the preferred stock, and all the common stock had been surrendered), and leave the creditors of the Food Company unprotected, is a contention hardly worthy of serious consideration.

Let us take a somewhat analogous case. Assume A. (a corporation acting through its officers and directors without the authorization of the stockholders) sells all its assets consisting of a piece of real estate to B. for $100,000. Upon the real estate is an outstanding mortgage of $90,000. B. pays the balance of the purchase price ($10,000) to A., and later pays off the $90,000 mortgage. May the nonconsenting stockholders

or creditors of A. repossess the real estate without paying to B. the $10,000 by A. received, or the $90,000 B. paid on the mortgage? Obviously not. Railway Co. v. McCarthy, 96 U. S. 267, 24 L. Ed. 693; Rankin v. Emigh, 218 U. S. 27, 35, 30 S. Ct. 672, 54 L. Ed. 915; 7 R. C. L. 677.

In the present case, instead of a mortgage upon the property, there were outstanding claims aggregating $475,000. B., the purchaser, satisfies $407,000 of the claims, and adequately secures another claim of $60,000. Can the remaining creditors of A. ask that the property be returned without offering to repay B. the $467,000 which B. either paid or secured to the creditors of A? The answer must be in the negative.

Other reasons supporting this conclusion need hardly be mentioned. However, we do say upon the evidence before us that the acts of the directors of the Tea Company in dealing with B. were not ultra vires.

Respecting appellant's urge that, if the goods be not returned, an accounting should be ordered, it is perhaps sufficient to say that no such relief was sought in appellant's petition, nor was the hearing sufficient to justify the determination of such an issue, assuming the pleadings be amended so as to permit of its consideration.

In passing, we may say, however, that, inasmuch as the action of the Tea Company was not ultra vires, its creditors and the nonconsenting preferred stockholders (if any there be) have only one remedy; that is, to file their claims in the bankruptcy court, and take such dividend as upon all of the evidence they are entitled to receive. If aggrieved by the determination, they will, of course, have their right to appeal. The District Judge gave the creditors of both corporations ample protection through the amendment he made to the referee's order.

The decree is affirmed.