WILLIAM BEHM, Respondent, v. L. R. BAIRD, as Receiver of Bank of Niagara, a Banking Corporation, Appellant.

(231 N. W. 876.)

Opinion filed August 1, 1930.

*George A. Bangs,* for appellant.

*A. W. Ponath,* for respondent.

BURR, J. On Saturday, November 19, 1927, the Bank of Niagara was open for business, sold drafts, received deposits and paid checks. On that day the plaintiff made a general deposit of a cashier's check for $500 issued to him by the Northwestern National Bank of Grand Forks, and then gave a check to the Security Bank for this amount in payment of a debt. The Bank of Niagara was indebted to the Northwestern National Bank for prior indebtedness amounting approximately to $9,000; but had a credit balance in that bank on open account of $835.45. The same day the Bank of Niagara remitted this cashier's check, and other items of commercial paper,—in all $1,605.12 —to the Northwestern National Bank "for collection and credit," and the account was so credited on November 21 before the Bank of Niagara closed. Thus the drawer paid the check. On the 19th the Bank of Niagara issued drafts on the Northwestern National Bank for $1,812.76, as shown by the books of the bank offered in evidence by the plaintiff. Two of these checks were as follows: To the Security State Bank of Niagara, $1,547.50, as "clearings;" to the Northwestern National Bank, $105.13. These two drafts came to the Northwestern National Bank about the same time as the remittance, and were charged to the account leaving a credit balance of $787.50. The record does not show whether these two drafts and the remittance were in the same letter, or were separate transactions, or whether the Security State Bank sent in its draft at a different time but these drafts were received and paid before the Bank of Niagara closed. That same day, by letter or telephone, the Bank of Niagara called on the Northwestern National Bank for $500 in currency which was shipped. Thus its credit on the books of the Grand Forks bank was reduced to $287.57. There was nothing whatever to indicate that when the Niagara bank remitted the cashier's check it required the Grand Forks bank to send

cash in lieu thereof. The two transactions are totally unconnected so far as the record shows.

The Bank of Niagara evidently sold additional drafts, or in some other way reduced its credit, for on its closing its books shows a balance to its credit in the Northwestern National Bank of $11.30 only. The record does not show whether these additional drafts or reductions were purchased by check or cash.

On the evening of November 21, the Bank of Niagara closed its doors, having on hand $335.65 in cash. The Northwestern National Bank applied the credit of $287.57 on the $9,000 indebtedness. Later, defendant Baird was appointed receiver of the Bank of Niagara.

The Security State Bank of Niagara could not cash plaintiff's check and returned it to him. Plaintiff demanded from the receiver the return of his money, and on refusal of the demand brought this action to impress a trust on the cash found in the bank. The lower court rendered judgment in his favor for $335.65, and the receiver appeals.

Plaintiff asks the receiver to give him a preferred claim because of fraud, claiming the Bank of Niagara was hopelessly insolvent and that the officers knew it.

Appellant claims there is no sufficient proof showing that hopeless insolvency of the bank was known to its officers on November 19th, nor any competent proof showing the books, examined in the trial and from which much of the evidence was received, are the books of the bank. Assuming the position of the respondent on these points the issue becomes one of fact.

This deposit made by plaintiff was a general one, the check being accepted as cash, a deposit slip made out, and credit given the plaintiff so that he might check against it. The check became the property of the bank, and the relation of creditor and debtor was created. Shuman v. Citizens State Bank, 27 N. D. 599, L.R.A.1915A, 728, 147 N. W. 388; Citizens State Bank v. Iverson, 30 N. D. 497, 153 N. W. 449; Friberg v. Cox, 97 Tenn. 550, 37 S. W. 263; Acme Hay & Mill Feed Co. v. Metropolitan Nat. Bank, 198 Iowa, 1337, 201 N. W. 129.

Plaintiff says it was a fraud on him to take his check. A claim founded on fraud is not by that fact alone entitled to priority over other claims. "The acceptation of a deposit of drafts by a bank irretrievably insolvent, constitutes such a fraud as entitled a depositor

to reclaim his drafts or their proceeds" (Widman v. Kellogg, 22 N. D. 396, 39 L.R.A.(N.S.) 563, 133 N. W. 1020; St. Louis & S. F. R. Co. v. Johnston, 133 U. S. 573, 33 L. ed. 685, 10 S. Ct. 390); but, as Judge Taft says in City Bank v. Blackmore, 21 C. C. A. 514, 516, 43 U. S. App. 617, 75 Fed. 771, "It is only where, by the rescission of the contract out of which the claim arises, on the ground of fraud, the specific thing parted with or its proceeds can be sufficiently identified to be returned, that fraud seems to give a priority of distribution."

In order to impress a trust upon the money which came into the hands of the receiver, the plaintiff must trace the funds which he deposited so as to prove that this cash is the proceeds of the cashier's check which he deposited. See Central Nat. Bank v. Connecticut Mut. L. Ins. Co. 104 U. S. 54, 26 L. ed. 693. He "may follow such property and reclaim it in any form into which it may have been changed, providing identification is possible. . . ." Merchants' Bank v. Schatz, ante, 365, 230 N. W. 18.

Even though insolvency of the bank was known to the officers at the time the deposit was made, so that the Bank of Niagara could be said to be a trustee of the fund, that fact alone does not give the plaintiff a preference, unless he can trace and recover his property. Atkinson v. Rochester Printing Co. 114 N. Y. 168, 21 N. E. 178. When the deposit became mingled with the general funds of like character in the Grand Forks bank belonging to the Bank of Niagara the means of identification failed and the money could not be reclaimed. Blake v. State Sav. Bank, 12 Wash. 619, 41 Pac. 910; Wilson v. Coburn, 35 Neb. 530, 53 N. W. 466. Had the deposit been delivered for a special purpose it would have been always a trust fund and no title would have passed to the Bank of Niagara; but even in that case, before the plaintiff would have preference over other creditors, the deposit must be identified and traced into the fund sought to be impressed with the trust.

The respondent says that the rule set forth in Widman v. Kellogg et al., supra, substantiates his claim. The case however, is not in point. There the deposit was a special deposit received by the bank as trustee. The plaintiff in that case was held to stand "in relation to the bank as a purchaser for cash of drafts." Neither is Morton v. Woolery, 48 N. D. 1132, 24 A.L.R. 1107, 189 N. W. 232, applicable.

Plaintiff claims the assets of the bank were augmented by his deposit. This would be good so far as it goes if proved, but not enough; he must trace the funds. But "deposits of third persons which are credited to the depositor and used by the Bank to pay its debts bring no preferential payment to the depositor." Empire State Surety Co. v. Carroll County, 114 C. C. A. 435, 194 Fed. 606. Such method diminishes liabilities rather than augments assets. First Nat. Bank v. Williams (D. C.) 15 F. (2d) 589; Willoughby v. Weinberger, 15 Okla. 226, 79 Pac. 777. Nor does it augment assets if used to buy drafts for "clearances."

The remittance, including the cashier's check, amounted to $1,-605.12, the drafts received at that time amounted to $1,653 all and some more used to pay the debts of the Bank of Niagara—"clearings" to the Security State Bank and the remainder to the Northwestern National Bank.

In Williams v. Cox, 97 Tenn. 555, 37 S. W. 282; Friberg v. Cox, 97 Tenn. 550, 37 S. W. 283; Klepper v. Cox, 97 Tenn. 534, 34 L.R.A. 536, 56 Am. St. Rep. 823, 37 S. W. 284; Showalter v. Cox, 97 Tenn. 547, 37 S. W. 286; Bruner v. First Nat. Bank, 97 Tenn. 540, 34 L.R.A. 532, 37 S. W. 286, we have a series of cases arising out of the insolvency of a bank, where depositors sought to charge funds in the hands of the receiver with a trust in their favor; and the receipt of deposits, checks and drafts and their transmission to other banks for credit, the insolvency of the bank as known to its officers, the mingling of funds and the liability of the receiver are all discussed.

In Friberg v. Cox, 97 Tenn. 550, 37 S. W. 283, supra, the First National Bank of Johnson City received from a depositor a check on the Chase National Bank and sent the check to the Southern National Bank for credit, which it received. The same day the Johnson City Bank failed and the Southern National Bank paid to the receiver the balance due the insolvent bank. The depositors sued the receiver claiming to "have traced the proceeds of their check into the fund that was due the Johnson City Bank from the New York bank, even if it can not be further separated and identified, and having done so, and that fund having been paid over to the receiver of the Johnson City bank after he took charge, they have the right to reclaim the amount— out of this fund." The court held, however, that when the check was

"credited to the Johnson City bank by the New York bank, before the former failed, then the right to follow and reclaim it was lost."

The Illinois act of June 4, 1879 (Myer's Stat. 444), is similar to our law set forth in § 10012, making it a crime for a bank to receive deposits when insolvent and punishing an officer thereof who knowingly receives or accepts such deposits. In Lanterman v. Travous, 174 Ill. 459, 51 N. E. 605, it was held that under such an act "for the protection of bank depositors, a depositor of a check with an insolvent bank, a few days before it made an assignment, cannot recover the deposit from the assignee, where the check passed out of the hands of the bank before the assignment, and was paid by the bank upon which it was drawn, in a clearance settlement between them, and the balance mingled with other moneys of the bank."

There was a balance due the insolvent bank on this clearance settlement. The court, in the body of the opinion said, referring to the plaintiff's claim, "Other checks besides her own went into the clearance settlement with the Bank of Edwardsville, and it cannot be known what the proceeds of her check were. How can it be said that the balance of $1,000 in money was received for her check rather than for the others?—It is clear that the proceeds of appellant's check cannot be traced. They have been mingled with the common mass, and their identity is lost. It cannot even be said with certainty that any such proceeds are in the hands of the assignee in the form of money. It is not so much a question between the appellant and insolvent as between her and other creditors, and no reason is perceived from this record, why, as between them, the maxim that equality is equity should not prevail." This is the situation in the case at bar. See also Nonotuck Silk Co. v. Flanders, 87 Wis. 237, 58 N. W. 383; Little v. Chadwick, 151 Mass. 109, 7 L.R.A. 570, 23 N. E. 1005; Birch v. International State Bank, 50 S. D. 60, 208 N. W. 167; Seiter v. Mowe, 182 Ill. 351, 55 N. E. 528. As said in Re Seven Corners Bank, 58 Minn. 5, 59 N. W. 633, "Had the proceeds of it (the check) come into his hands (the receiver) in such shape that they could have been identified, an order to pay them over would be proper. In such case the specific property would have been that" of the plaintiff. "As it was there existed nothing but a cause of action against the bank for—its proceeds; and

as such it stands on the same footing as any other claim on the assigned assets."

The case is submitted on plaintiff's showing. Were it not for the fact that on the day the cashier's check issued by the Grand Forks bank was returned to Grand Forks and credited to the account of the Bank of Niagara the Bank of Niagara received from the Northwestern National Bank $500 in cash there would be no controversy. The position would be too plain. If the plaintiff could show the remittance of the $500 cash was in payment of the cashier's check, he would yet be required to show that the $335 in the bank was a portion thereof, and not money received from other depositors. It is clear that the money remitted by the Northwestern National Bank to the Bank of Niagara was not proceeds of this cashier's check. There was no relationship between the cashier's check and the money found by the receiver. This shipment was an entirely different transaction, though on the same day. It had no more relationship to the cashier's check than it had to previous transactions between the same banks. Therefore the judgment must be reversed and the case dismissed.

BURKE, Ch. J., and NUESSLE, BIRDZELL and CHRISTIANSON, JJ., concur.