### BURGESS v. FORSHAR.

1. BANKS AND BANKING—ACCEPTANCE OF DEPOSITS—SOLVENCY.
   Acceptance of deposits by bank is representation of its solvency.

2. SAME—INSOLVENCY—LEGAL RESERVE.
   That bank's reserve may fall below amount which it is required by law to maintain is not in itself proof of its insolvency, but if bank officials are unable to secure funds to meet deficiency, it is insolvent, notwithstanding its assets are much greater than its liabilities, and it may be closed by State banking commissioner.

3. SAME—WHEN BANK INSOLVENT—DEPOSITS—TRUST FUNDS.
   Before bank, whose reserve has fallen below legal limit, is declared insolvent, justifying treatment of general deposit as trust fund, it must appear that the bank officers had no reasonable hope or expectation that their efforts to place bank on sound financial standing would prove successful, and that suspension of business was inevitable.

As to right of depositor to rescind or claim trust in respect of a deposit because of insolvency of bank when it was made, see annotation in 20 A. L. R. 1206; 25 A. L. R. 728; 37 A. L. R. 620.

4. SAME—INSOLVENCY—NOTICE.

Suit to declare deposit in bank a trust fund giving depositor preference over other creditors of the bank was properly dismissed, where, at time deposit was made, bank's officers did not know that it was insolvent, although the amount of its reserve was below legal limit.

Appeal from Sanilac; Boomhower (Xenophon A.), J. Submitted April 21, 1931. (Docket No. 162, Calendar No. 35,337.) Decided June 1, 1931.

Bill by Guy H. Burgess, treasurer of Marion township, Sanilac county, against John N. Forshar, receiver of State Bank of Deckerville, to declare deposits of township funds a preferred claim against assets of the bank. Bill dismissed. Affirmed.

*Alex. B. Simonson,* for plaintiff.

*Robert J. West,* for defendant.

SHARPE, J. The State Bank of Deckerville closed its doors and ceased to do business on January 5, 1927. On February 11th, the circuit court for the county of Sanilac, in chancery, appointed a receiver for said bank. The defendant Leon O. Wentworth is now acting as such. The plaintiff was treasurer of the township of Marion, in that county, in 1926 and 1927. During the latter part of December, 1926, and on January 3 and 4, 1927, he made deposits in the said bank to the amount of about $5,000. It is his claim that the officers of the bank, at the time his deposits were accepted, knew that it was insolvent, and in the bill of complaint here filed on December 3, 1928, he seeks to have these moneys declared to be held in trust and to be a preferred claim in the disbursements of the receiver.

The proofs were taken in open court, after which a decree was entered dismissing the bill. Plaintiff has appealed.

The acceptance of deposits by a bank is a representation of its solvency. Its customers have the right to expect that their checks will be honored when presented for payment. But, in order to do business, the bank must make loans of the moneys so deposited at an interest rate which will insure it a profit over and above its operating expenses. Applications for loans and the security offered therefor must be passed upon by its officials. There is a limitation on the amount of such loans by the reserve which the law requires to be maintained to meet withdrawals. That the reserve may fall below the requirement is not in itself proof of insolvency. The duty then devolves upon its officials to secure funds by the collection of the loans made, or from other sources, to meet the deficiency. If unable to do so, the bank is insolvent and may be closed by the State banking commissioner. But before such action is taken, in order that a general deposit shall be treated as a trust fund, it must appear that the officers had no reasonable hope or expectation that their efforts to place the bank on a sound financial standing would prove successful. It must also appear to them that it is reasonably apparent that the bank will be unable to meet its obligations as they mature, and that suspension of its business is inevitable; in other words, that it is hopelessly insolvent. Our attention has not been called to any decision of this court, nor have we been able to find one, in which the identical question here presented was considered, although the opinions in *Perley* v. *County of Muskegon,* 32 Mich. 132 (20 Am. Rep. 637), *Stone* v. *Jenison,* 111 Mich. 592 (36 L. R. A. 675),

and *Commissioner of Banking* v. *Chelsea Savings Bank*, 161 Mich. 691, may be read with profit. The rule stated is, we think, a general one and supported by the great weight of authority. See the cases reported in *Steele* v. *Commissioner of Banks*, 240 Mass. 394 (134 N. E. 401, 20 A. L. R. 1203), *Raynor* v. *Scandinavian-American Bank*, 122 Wash. 150 (210 Pac. 499, 25 A. L. R. 716), and *Washington Shoe Manfg. Co.* v. *Duke*, 126 Wash. 510 (218 Pac. 232, 37 A. L. R. 611), and the annotations appended thereto.

The question here presented is, as stated by plaintiff's counsel: "Was the State Bank of Deckerville, to the knowledge of its officers, hopelessly insolvent" at the time these deposits were made by plaintiff?

The trial court found that this bank had been reorganized in 1925 "and many thousands of dollars contributed to its capital." He also found that at the time it closed "its assets, as shown by its records, amounted to about $100,000 more than its liabilities." In the opinion filed he said:

"After the reorganization of the bank, the officers were of the opinion that the financial status of the bank was sound and that it would be able to carry on successfully, but, being a country bank, it had considerable money tied up in real estate and real estate mortgages. Real estate values were depreciating rapidly in the vicinity about that time; this was especially true of farm lands. It was difficult for the bank to realize upon its mortgages and the farmers, being in a financial slump, could not meet their obligations on notes to the bank. Notwithstanding these handicaps, the bank successfully met this condition and paid its obligations in the face of a steady withdrawal of its deposits until the very hour it closed its doors. The officers and men in charge fully expected to be able to meet the unusual

run on this bank, until word was received on the afternoon of January 5, 1927, that the officers of the bank were unable to realize on their assets to meet the emergency.''

While the assets as shown were more than the liabilities, the withdrawals were such as to keep the reserve below the legal requirements. This condition existed for some little time before the bank closed, during which the officers were making earnest endeavors to dispose of securities. Fred J. Kemp, who had been cashier from September 1, 1925, until the bank closed, testified at length as to the efforts made to prevent a failure. On Monday, January 3d, he succeeded in getting a meeting of several of the bankers in Sanilac, Huron, and St. Clair counties, at Port Huron, to consider the situation. His purpose was to induce them to pay cash for certain of the securities of the Deckerville bank, and thus bring its reserve up to the requirement. He testified that most of the bankers present agreed to do so, but their agreement was contingent upon the action of certain parties in Detroit. He was able to dispose of about $25,000 of liberty bonds, and increased the reserve to that amount. He remained in Port Huron the next day, and on the 5th, when he got to the bank, he found that there had been a ''gradual withdrawal'' of deposits during his absence, but all checks presented were cashed until after the noon hour, when he received a telephone call from Detroit informing him that they would not receive the aid they expected from that source. Soon thereafter the doors of the bank were closed and the State banking department notified. Its suspension was in no way due to any unlawful act of its officers or board of directors. The evidence, con-

sidered as a whole, we think justified the following statement by the trial court:

"Under the state of facts as shown by the evidence in this case, it would appear to this court that where a bank continued to accept deposits and pay out deposits, even during a severe run on the bank, while the officers were fully expecting to meet the emergency, there cannot be said to be fraud in accepting deposits in the usual course of business before discovering the emergency could not be met by the bank."

We cannot but conclude that until noon of January 5th the officers were hopeful, in fact had much confidence, that the bank would receive such assistance from other banks and men of means that its reserve would be increased to the requisite amount and that the withdrawals would not necessitate the closing of the bank.

It follows that the deposits made by the plaintiff, not being special (*Perley* v. *County of Muskegon, supra*), were not received by the bank under such circumstances as to constitute a trust fund and give the plaintiff a preference over the other creditors of the bank as to them.

The decree is affirmed, with costs to appellee.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.