ILLINOIS CENT. R. CO. v. RAWLINGS.

RAWLINGS v. ILLINOIS CENT. R. CO.

No. 6679.

Circuit Court of Appeals, Fifth Circuit.

July 13, 1933.

Rehearing Denied Aug. 16, 1933.

HUTCHESON, Circuit Judge, dissenting in part.

Edward W. Smith, of Clarksdale, Miss., and Chas. N. Burch, of Memphis, Tenn., for appellant.

J. L. Roberson and Sam C. Cook, both of Clarksdale, Miss., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

## HUTCHESON, Circuit Judge.

Under circumstances differing in detail, but not in substance and effect, from those in Texas & P. Ry. Co. v. Pottorff (C. C. A.) 63 F.(2d) 1, the Planters' National Bank, in order to secure the continuance with it of the Illinois Central Railroad Company as a general depositor, pledged with that company certain securities. At this time, December, 1928, the bank was not in difficulties. The pledge agreement provided that the bank might withdraw the securities at any time by substituting a surety bond satisfactory to the company, or by paying to it the full amount of its deposit balance. It authorized the company, in default of the payment on demand of its deposits, to sell sufficient of the securities to make it whole. In interpretation of the agreement, and by way of emphasizing the fact that the arrangement was not for a borrowing by the bank upon security, but for a general deposit with preferential treatment over the other general depositors, the last clause provided: (1) That the company was obligated to keep no particular amount on deposit; (2) that the agreement did not change the deposit from an ordinary checking account to a time deposit; and (3) that "it shall not in any way create any relation between the bank and the railroad company other than as a depositor with the right to withdraw the deposit at any time, with or without notice." This ordinary relation of depositor and banker continued until December 30, 1930, when the bank having found itself unable for want of cash to go on, closed, and was placed in the hands of a receiver. On that day the deposit balance of the company was $5,899.01.

The demand made by the receiver for a return of the securities having been refused, this suit was brought. Alleging the unlawfulness of the pledge agreement, and that the company was about to sell the bonds deposited under it, the bill sought an injunction against the sale, and to recover the securities as assets of the bank. Defending, the company contended that the receiver should not have the bonds because (a) the pledge agreement was valid and enforceable as made, and (b) if it was not, equity and good conscience would not permit the bank to have the bonds back without returning the deposits which had been made on the faith of the pledge. By way of affirmative relief the company sought (1) a decree authorizing it to sell the bonds under the terms of the pledge, and (2) in the alternative, if the court should hold the pledge invalid and deny defendant any relief under it or because of its making, a judgment for the return of its deposits as fraudulently received when the bank was, within the knowledge of its officers, hopelessly and irretrievably insolvent. These deposits it sued for as not general, but special deposits, for which the bank and the receiver were accountable to it, not as debtor, but as trustee. In support of this affirmative claim it was alleged that all of the deposits which it had made with the bank in December, 1930, especially those of December 27 and 29, were made on the faith that it was solvent, induced by the continued representations and holding out of its officers that it was; that on that day when it made the deposits which have resulted in the credit balance in its favor, the bank was hopelessly and irretrievably insolvent, and known to its officers to be so; that the deposits it made on December 27 and 29 went into the bank, and have passed into the hands of the receiver, not as assets of the bank but as the property of the company.

Upon issue joined, it was shown without dispute, that the pledge agreement was made in good faith while the bank was solvent, and that, by its making, the bank secured the continuance with it of the deposits of the company. It was also shown in the same way, that for the greater part of the year 1930 the bank had been in straitened circumstances, which had compelled it to make heavy borrowings from the Federal Reserve Bank, and other shifts from time to time, to supply the needs of its customers, and keep the bank in going condition. In the latter part of 1930 the situation had become critical, and its officers well understood that unless an additional loan of around $200,000 could be secured, the bank could not keep open. Negotiations and arrangements, however, were on foot for this loan, and on December 27 and 29, when the deposits which resulted in the balance in controversy were made, the officers of the bank, though realizing the gravity and seriousness of the situation, really believed in good faith that arrangements could be made so that the bank could go on. In good faith they kept the bank open, receiving deposits and honoring checks and drafts as they came in, and it was only on December 30, when they learned that the negotiations for the loan had failed, and two checks calling for an aggregate withdrawal of $35,000 in cash were presented, that they determined that they could no longer go on, but must shut down.

The creation of the $5,899.01 deposit balance for which the company sues came about in this way. On the morning of December 27 the company having a deposit balance of $833.23 presented its check in the amount of $8,000 which was paid by the bank leaving an overdraft of $7,166.77. Thereafter on the same day the company made two deposits aggregating $8,914.50 leaving a balance of $1,-747.73. On Monday, the 29th, the company deposited $4,151.28. All of these deposits, except $942.50 on the 27th and $349.26 on the 29th in cash and currency, were checks. These checks, drawn some on the Planters' Bank, some on out of town banks, were collected mainly by the Memphis Branch of the Federal Reserve Bank of St. Louis, to which the Planters' Bank was indebted, and when the bank closed its doors, that bank credited these collections on the indebtedness.

The District Judge, finding the agreement invalid as in effect the creation of an unlawful preference in event of insolvency of one general depositor over others, denied it effect, either defensively or by way of affirmative relief, and ordering it vacated and set aside, directed the company to deliver the securities to the receiver. On the affirmative claim of the company that because of the hopeless and irretrievable insolvency of the bank when the deposits were received they should be regarded as held in trust for it, he found that on December 29, 1930, the bank was, within the knowledge of its officers, hopelessly and irretrievably insolvent, and that the receipt of the deposits of that day as general deposits was a fraud upon the company, operating to make them trust funds. That a part of them, to wit, $2,381.93, had been traced into the receiver's hands and that defendant should have judgment for them. Finding that no part of the general deposits of December 27 had been properly traced into the hands of the receiver, he found it unnecessary to decide whether their receipt on that day as general deposits was fraudulent so as to make them trust funds. Finding, however, that certain collection items aggregating $279.81, which, in process of collection when the bank closed, were finally collected by the receiver, had been deposited with the bank on the 27th upon a deposit slip having printed on its back a general notice of the terms under which the deposits were received,[1] had been received by the bank, not as general deposits for the account of the bank, but as special deposits, to be collected as agent of the company, he gave the company judgment for that amount also.

This decree has satisfied neither plaintiff nor defendant. Defendant, appealing, attacks the finding that the pledge agreement was illegal and that the securities must be surrendered, assails as unsupported by the evidence, the finding that none of its general deposits of December 27, and only $2,381.93 of those deposited on December 29, were identified as having come into the receiver's hands and complains of the failure of the court to find the bank hopelessly and irretrievably insolvent on December 27.

Plaintiff by cross-appeal, insisting that

---

[1] "Please take Notice; In receiving items for deposit or collection this bank acts only as depositor's collecting agent, and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This bank or its correspondents may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited.

"This slip is a duplicate of our memorandum of money or checks you have left in our care," etc.

none of the deposits were trust funds, attacks the finding of hopeless and irretrievable insolvency on December 29, and the finding that the items aggregating $279.81 were received on special deposit.

Appellant concedes that the conclusion of the trial court that the pledge agreement was invalid and unenforceable is fully supported by our decision in the Pottorff Case. It insists, however, that that decision is not authority for the further finding of the trial court that the receiver could retake the bonds, without returning the deposits. It points, as distinguishing that case from this, to the fact that here the receiver is the actor, seeking to retrieve the securities from the possession of the company, whereas there the company was the actor, seeking to obtain them from the possession of the bank's trust officer, and therefore suing on the contract.

We do not think the cases can be so distinguished. By the Pottorff Case it was meant to decide, and it was decided, that such an arrangement, looking to creating, in the event of insolvency, preferences among general depositors, was fundamentally invalid; that no rights could be predicated on it, or on the physical possession of the pledged bonds acquired by virtue of it. In that case the bonds were no more in the possession of the bank than they were in this case. They were in the possession there of the trust officer, who held them, not as agent for the bank, but in trust for the company. That decision holding the pledge agreement invalid, and directing the trustee to surrender the bonds to the receiver, fully supports the decision of the District Judge here, holding the agreement to be without force or effect, and directing the delivery of the securities to the receiver. It was there decided that the bank and the company had made two agreements; a legal one, that the company should continue to be a general depositor of the bank sustaining the relation and being entitled to all the service which goes with the relation, including the right of repayment of the deposits on demand. The other, an illegal one, in effect that should the bank become insolvent, the company would have a preference over the other general depositors. The bank's liability on the first agreement is not at all denied by the receiver. He recognizes the obligation to pay the amount deposited on demand, and only fails to do so because of lack of funds. The bank's obligation on the other agreement is repudiated by the receiver, because if recognized, by either permitting the sale of the securities or their retention by the company, it would be a consenting to the creation of an unlawful preference.

The view we took in that case is supported by the decisions in Baltimore & Ohio R. Co. v. Smith (C. C. A.) 56 F.(2d) 799, and Sneeden v. City of Marion (C. C. A. 7) 64 F.(2d) 721, cases directly in point, and is directly in accord, we think, with general equitable principles. Cases like Rankin v. Emigh, 218 U. S. 27, 30 S. Ct. 672, 54 L. Ed. 915; Citizens' Central Nat. Bank v. Appleton, 216 U. S. 196, 30 S. Ct. 364, 54 L. Ed. 443; In re Union Food Stores (C. C. A.) 3 F.(2d) 736; American Surety Co. v. Philippine Nat. Bank, 245 N. Y. 116, 156 N. E. 634, 635, on which the company relies, are cases where a solvent corporation attempts, while repudiating an agreement as ultra vires, to hold to the benefits of it, or, as in the Emigh Case where, though the corporation is insolvent, its effort is to hold on to specific property obtained by virtue of an illegal agreement. They are not cases like this one, where a depositor endeavors to stand asserting against the receiver of an insolvent bank at one and the same time, the inconsistent positions of a general depositor and a preferred creditor. To give this position effect, directly or indirectly, would be not to do equity, but to prevent its being done.

Three cases, State Bank v. Stone, 261 N. Y. 175, 184 N. E. 750, Schornick v. Butler (Ind. Sup.) 185 N. E. 111, and Sneeden v. City of Marion (C. C. A. 7) 64 F.(2d) 721, are cited by appellant in its supplemental argument as directly supporting its view that though the pledge agreement be invalid, a private depositor may have the benefit of it by holding on to the securities until the deposit is paid back. Only one of these, State Bank v. Stone, so holds. Both the Schornick Case and the Sneeden Case were cases of deposits of public funds. In the Schornick Case it was decided that the pledge was valid. What was said about the right of the pledgee to hold the securities was not a part of the decision. In the Sneeden Case the majority held both that the pledge was invalid, and that it raised no equity in the pledgee's favor to keep the securities. This is the view to which, in the Pottorff Case, we stand already committed.

We find no error of which appellant may complain in the action of the court denying effect both to the agreement and to the possession of the securities by the company which it brought about, nor any against appellant in respect to its claim that its deposits of December 27 and 29 had been fraudulently received by the bank and constituted trust

funds. That part of the decree from which it appeals is accordingly affirmed. We think, however, that there is merit in cross appellant's attack on the decree, and that part of it awarding recovery in favor of the company should be reversed.

It is well settled that the receipt of deposits when a bank, within the knowledge of its officers, is hopelessly and irretrievably insolvent, is a fraud on the depositor, who has a right to rely on the assurance of ability to pay the deposits on demand which the open bank creates. Such receipt operates to prevent the creation of the ordinary relation of banker and depositor, making the deposit trust funds. Magee on Banks & Banking, p. 618; Western German Bank v. Norvell (C. C. A.) 134 F. 724; Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537, 52 Am. Rep. 9; St. L. & S. F. R. Co. v. Johnston, 133 U. S. 566, 10 S. Ct. 390, 33 L. Ed. 683. Since, however, the trust is created only when there is fraud, the burden rests on the depositor to prove, not that the bank was insolvent when the deposits were made, but that it was hopelessly and irretrievably so within the knowledge of its officers. It has therefore been held that while officers were making earnest endeavors to and expected to secure assistance, believing that the assistance would be forthcoming before withdrawals necessitated their closing, there is no fraud. Burgess v. Forshar, 254 Mich. 531, 236 N. W. 853; Florence Mines Co. v. Prescott State Bank, 36 Ariz. 472, 287 P. 296; Behm v. Baird, 59 N. D. 733, 231 N. W. 876. That where negotiations are pending for the relief of a bank, the bank is not hopelessly and irretrievably insolvent within the knowledge of its officers so as to make the receipt of deposits fraud if the officers sincerely and in good faith believe that they will be effective. Beehive Marketeria v. Citizens Bank, 126 Wash. 526, 218 P. 237; Forsythe v. First State Bank, 185 Minn. 255, 241 N. W. 66, 81 A. L. R. 1074. Mere insolvency, therefore, does not make a deposit a trust fund. Steele v. Bank of California, 140 Or. 107, 9 P.(2d) 1053; Ronchetto v. State Bank of Bevier (Mo. App.) 51 S.W.(2d) 174, 179; [2] Federal Reserve Bank v. Omaha Nat. Bank (C. C. A.) 45 F.(2d) 511; Byrd v. Ross (D. C.) 58 F.(2d) 377.

In Washington Shoe Mfg. Co. v. Duke,

126 Wash. 510, 218 P. 232, 37 A. L. R. 611, it was held that a bank which, though at the time of receiving deposits it is in an embarrassed condition, is negotiating for a consolidation with a fair hope of success, is not hopelessly and irretrievably insolvent so as to impress a deposit with a trust. Brennan v. Tillinghast (C. C. A.) 201 F. 609; Steele v. Com'r of Banks, 240 Mass. 394, 134 N. E. 401, 20 A. L. R. 1203; Fidelity & Deposit Co. v. Kelso State Bank (C. C. A.) 287 F. 828; Michie, Banks & Banking, vol. 3, p. 109.

The rule has its sound supporting reasons. A bank is organized to receive deposits, and while it is a going concern it must continue to receive them. "For it is obvious that to refuse to accept deposits would be equivalent to a cessation of business." Easton v. Iowa, 188 U. S. 232, 23 S. Ct. 288, 291, 47 L. Ed. 452. A no less imperative duty rests upon the officers of a bank to keep it open by receiving deposits, thus averting the losses that inevitably follow closing, than rests upon them to close the bank when it may no longer be kept open.[3]

Applying the rule to the facts of this case, we think it plain that the proof wholly fails to show that the railroad company's deposits were taken under circumstances making their taking fraudulent. On the 27th the bank, without question, paid the company's large overdraft. On both the 27th and the 29th it took the deposits of others and paid their checks as presented, in the belief that the negotiations then pending would succeed. If these negotiations had succeeded, the bank could have kept on. If pending those negotiations the bank had refused to receive deposits their failure and that of the bank would have been inevitable. We think that in this situation it cannot be said that the bank was hopelessly and irretrievably insolvent within the knowledge of its officers, and that the taking of its deposits was a fraud upon the company.

It remains only to determine whether the items aggregating $279.81 were, because of the notice on the deposit slip, special deposits.

---

[2] In the Ronchetto Case it was said: "A bank is insolvent when its liabilities exceed its assets to the extent that it cannot reasonably hope to meet its obligations in the usual course of business; and it is hopelessly insolvent when there is no reason to believe otherwise. Any situation is hopeless in the absence of reasonable cause to hope."

[3] "It is matter of common knowledge that banks and other corporations continue, in many instances, to do their regular and ordinary business for long periods, though in a condition of actual insolvency, as disclosed by subsequent events. It cannot surely be said that all payments made in the due course of business in such cases are to be deemed to be made in contemplation of insolvency, or with a view to prefer one creditor to another. There is often the hope that, if only the credit of the bank can be kept up by continuing its ordinary business and by avoiding any act of insolvency, affairs may take a favorable turn, and thus suspension of payments and of business be avoided." McDonald v. Chemical Nat. Bank, 174 U. S. 610, 19 S. Ct. 787, 790, 43 L. Ed. 1106.

The writer does not think they were. He thinks the only purpose of this agreement, its only effect, was to save expressly to the bank the right to reverse the credit entries, in case the items were not collected. These deposits are referred to in the findings as deposits made under a special arrangement. The record, however, shows that they were deposited just as the other deposits were. The only evidence in support of the view that they were special deposits is the notice printed on the back of the deposit slip. He does not think that the character of these deposits as general deposits was at all affected by this notice. The notice contained no reference to the title to the deposits, no reservation against ownership in the bank in case the collection was made. It imposed not a condition precedent to the vesting of title to the deposit in the bank, but a condition subsequent, operating to relieve the bank from responsibility and debt in case the collection failed. It was not effective to convert what was otherwise a general, into a special, deposit. Washington Shoe Mfg. Co. v. Duke, 126 Wash. 510, 218 P. 232, 37 A. L. R. 617. This is not a case as were Vickers v. Machinery Warehouse & Sales Co., 111 Wash. 576, 191 P. 869; Raynor v. Scandinavian-American Bank, 122 Wash. 150, 210 P. 499, 25 A. L. R. 716; Spurway, Receiver, v. Pauline Kellogg and E. Culver (C. C. A.) 63 F.(2d) 883, and Kelley v. Doepke, Receiver (C. C. A.) 63 F.(2d) 885, of a collection undertaken by a bank for one not a depositor. It is a case merely of an express reservation by the bank of the right to charge back against a general depositor, when the collection fails, items previously credited to him. Here, as in Bryant v. Williams (D. C.) 16 F.(2d) 159, 161, and cases cited, there was no agreement, express or implied, that the deposit should not be drawn against until collected, as was the case in Re Jarmulowsky (C. C. A.) 249 F. 319, L. R. A. 1918E, 634. On the contrary, the paper was delivered to the bank with an unqualified endorsement giving the depositor the unquestioned right to draw upon it.

The majority does not agree with these views. They say that the finding of the court is sustained by the record. As to these items, aggregating $279.81, therefore, the decree is affirmed as against the attack of cross appellant.

It is also affirmed as to the part of it attacked on the main appeal.

As to the balance of it, attacked on the cross-appeal, the decree is reversed, with directions to the District Court to enter its decree in accordance herewith.