## BOLLING v. BOWEN et al.

### In re CURY.

### No. 4713.

Circuit Court of Appeals, Fourth Circuit.
March 10, 1941.

See, also, In re Cury, D. C., 34 F.Supp. 526.

Fred B. Greear, of Norton, Va. (M. M. Long, of St. Paul, Va., on the brief), for appellant.

R. R. Parker, of Appalachia, Va. (H. J. Kiser, of Wise, Va., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a controversy arising in the bankruptcy proceedings of Sol W. Cury from an order denying in toto a petition to assert a lien on funds in the hands of the trustees in bankruptcy. Appellant is one H. C. Bolling, an attorney at law of Norton, Virginia, who had represented the bankrupt in the collection of claims under fire insurance policies. At the time of the adjudication he had received under the policies and had in his possession drafts payable to himself and bankrupt in the sum of $7,540.34, which he turned over to the trustees in bankruptcy. He later filed petition claiming 15% of this amount as a fee, asserting that same constituted a "preferred claim or lien upon said insurance funds". The court denied his petition and refused to allow him anything whatever from the funds which he had collected, on the ground that the petition which he had filed constituted a false and fraudulent proof of debt against the estate of the bankrupt.

There can be no question upon the record but that appellant was duly employed by the bankrupt to collect his insurance claims, eight in number, or that he represented the bankrupt in negotiations with the insurance adjuster and secured the settlement under which the drafts were received by him. On July 27, 1939, he entered into a written contract with bankrupt under which he was to be paid 15% of the amount collected for his services. On August 22, at about the time of the filing of proofs of claim under the policies, he agreed with the bankrupt to give him a reasonable discount on his charges if settlement with the insurance companies should be reached at an early date and without much more work, and a pencil memorandum to that effect was endorsed by appellant on the back of the contract which he held. A day or two later, in response to a question from bankrupt, he stated that if the matter were settled then, his charge would be $300. The matter was not settled then, however, and an effort was made to have bankrupt indicted for arson

in connection with the fire out of which the claims arose. This attempt failed and appellant continued to handle the claims, receiving in adjustment thereof the drafts for $7,540.34 in the latter part of October.

Appellant was negotiating with creditors during the period that he was handling the claims and expected to avoid bankrupcty for his client. It developed, however, that the client had assigned his interest under the policies to secure an indebtedness of $3,600 to a bank; and to avoid this assignment a petition in bankruptcy was filed by other creditors on November 6, 1939. Following the adjudication in bankruptcy, appellant and bankrupt indorsed the drafts which appellant had received in payment of the insurance claims and delivered them to the trustees in bankruptcy, appellant having received nothing whatever for his services in handling the claims.

On January 5, 1940, appellant filed with the referee in bankruptcy a petition setting forth his services to the bankrupt in the collection of the funds turned over by him to the trustees and asking that his claim be allowed for 15% of the collection, or the sum of $1,131.05, and that same be paid out of the insurance funds in the hands of the court. Attached to the petition was a copy of the written contract between appellant and bankrupt, but the memorandum hereinbefore referred to was not copied thereon. Appellant testified that he was unaware of the fact that the memorandum had not been copied, his stenographer testified that failure to copy same was due to an oversight or inadvertence on her part, and there is no finding by the court or referee that her testimony should not be accepted. It should be noted that the petition did not conform in any way to the statute with regard to the filing of proofs of claim (11 U.S.C.A. § 93), nor to the official forms prescribed for that purpose. See official forms 31 and 32, 11 U.S.C.A. following section 53. It was not verified; the original of the contract was not attached; and it contained no averment that there were no setoffs or counterclaims thereto. It was entitled "petition", and not "Proof of claim" and, after setting forth the contract and the services rendered thereunder, concluded as follows:

"That through your petitioner's efforts, a collection was made of $7,540.34, consisting of eight insurance drafts which were received during the latter part of October and the first of November, and prior to the filing of the involuntary petition in bank-

ruptcy on November 6th; that said collections having been made by your petitioner prior to the filing of the involuntary petition on November 8th, your petitioner became vested with a property interest in or title to fifteen percent (15%) of said insurance funds of $7,540.34, which is the sum of $1,131.05, and he therefore asserts a preferred claim or lien upon said insurance funds for said amount due him under the employment agreement aforesaid, and Sections 3428 and 3429 of the Code of Virginia.

"Wherefore, your petitioner prays that his preferred claim may be paid out of said insurance funds now in possession and custody of the trustees and referee, and he will ever pray, etc."

After filing this petition, appellant stated to one of the attorneys for the trustees that all that he expected was a reasonable fee and that he had agreed with the bankrupt to give him a discount. On February 19, 1940, the referee called appellant's attention to the fact that the petition was not verified; and, in verifying it, appellant stated to the referee that he had agreed to give bankrupt a discount on the fee provided for in the contract.

In a conference between appellant and trustees and their attorneys, a compromise was agreed upon subject to the approval of the referee and the court, under which appellant was to be paid $300 for his services. The referee refused to approve this compromise and denied any compensation whatever to appellant, on the ground that he had fraudulently filed proof of debt in an excessive amount against the estate of the bankrupt. The District Judge approved this action of the referee.

The action of the referee seems to have resulted from a misunderstanding of the true situation. He took the view that appellant had filed a proof of debt, presumptively correct under Whitney v. Dresser, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584, and that, in the absence of exceptions thereto, the claim would have been allowed as filed. The evidence shows, however, quite conclusively we think, that appellant did not expect his claim to be allowed as filed, but expected that it would be passed upon in the light of proofs offered and would be reduced in amount by the referee. He so testifies; and the fact that he filed the petition in the form that he did, and not in the form provided for proofs of claim, corroborates his testimony.

The proper procedure in a case of this sort, moreover, was by intervening petition and not by proof of claim. Appellant was asserting a lien on funds in the hands of the trustees, not a mere claim against the estate of the bankrupt; and it is clear, we think, that his claim of lien was not without merit under the laws of Virginia. He had no rights, it is true, under the code sections referred to in his petition; but under the common law of Virginia he did have a lien for the value of his services upon funds collected for his client, unless his right thereto had been lost or forfeited. Fitzgerald's Exutor v. Irby, 99 Va. 81, 37 S. E. 777; 5 Am.Jur. 388 et seq.; note 51 Am.St.Rep. 251 et seq. The proper method of asserting a lien against funds in the possession of the bankruptcy court was by intervening petition; and upon the filing of such petition no presumption of its correctness arose, but proof was necessary before it could be allowed. Weekley v. Oil Well Supply Co., 4 Cir., 12 F.2d 539, 540. As we said in the case cited: "So far as claiming a lien on property in the possession of the trustee is concerned, the filing of a claim secured or unsecured has in reality nothing whatever to do with this. The lien claimant 'is not even required to file a formal proof of claim, though, where the trustee has taken possession of the property and sold it, he may file a petition to obtain the proceeds of the lien in the hands of the trustee.' Sanford, J., in Re North Star Ice & Coal Co. (D.C.) 252 F. 301. It is allowable practice to claim a lien on property in possession of the trustee by allegation incorporated in proof of secured debt. Remington on Bankruptcy (3d Ed.) § 2599; Coder v. Arts, 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772, 16 Ann.Cas. 1008. The better practice, however, is to file an intervening petition. Remington (3d Ed.) §§ 2485 and 2599. *But, whether the claim of lien be asserted informally in connection with proof of secured debt or properly by intervening petition, it must be supported by proof, as the burden rests upon the claimant.* Re Union Food Stores Co. [7 Cir.] 3 F.(2d) 736; First Savings & Banking Co. v. Kilmer [4 Cir.] 263 F. 497; Shook v. Levi [9 Cir.] 240 F. 121, 153 C.C.A. 157; Remington (3d Ed.) § 2455. It would seem to need no citation of authority, however, to sustain the propositions that one who claims a lien on property in custodia legis must support his allegation by proof, and that a lien claimant will have no artificial presumption of the correctness of his claim because he asserts it informally along with proof of secured claim instead of following the better practice of filing an intervening petition." (Italics supplied).

We do not mean to say, of course, that relief should not be denied one who fraudulently files a false intervening petition. A court of bankruptcy is a court of equity; and he who comes into equity must come with clean hands. Ordinarily, however, a mere excessive claim in an intervening petition would not be ground for denying all relief, certainly in the absence of fraud; and we are satisfied that there was no fraud involved here. Fraudulent intent is conclusively negatived, we think, by proof of the statements shown to have been made by appellant to the attorney for the trustees and to the referee that a discount should be allowed from the fee provided by the contract. The omission from the copy of the contract as filed of the memorandum indorsed on the contract agreeing to give a discount therefrom would, without explanation, be a suspicious circumstance; but we think that the evidence of appellant and his stenographer sufficiently explains the omission, especially when viewed in the light of the fact that appellant, before objection was filed to the petition, told the referee of the substance of the memorandum, i. e. that the fee provided by the contract was subject to reduction. In the light of this circumstance, it is perfectly clear that the finding of fraudulent conduct on the part of appellant is not justified by the record.

We need not go into the question as to whether the lien of appellant on the proceeds of the collection made by him was lost by the surrender of the checks to the bankruptcy court. That would depend upon the circumstances attending their surrender; but there was certainly enough merit in the claim to justify the compromise agreement entered into between appellant and the attorney for the trustees. The agreement was a reasonable one and should receive the court's sanction. The order appealed from will accordingly be reversed and the case will be remanded with direction to enter a decree that appellant be paid the sum of $300 from the funds in the hands of the trustees in bankruptcy in satisfaction of the claims set forth in his petition.

Reversed.