## BRUNER v. BANK.

### (*Knoxville.* October 31, 1896.)

1. BANKS AND BANKING. *Reclaiming deposits from receiver of insolvent bank.*

   A cash deposit fraudulently received by an insolvent bank after its officers know of its insolvency, cannot be reclaimed from its receiver, when it went into the general funds of the bank, and cannot be identified and separated from other funds on hand when the receiver took charge. (*Post, pp. 541–543.*)

   Cases cited and approved: Aiken v. Jones, 93 Tenn., 353; Sayles v. Cox, 95 Tenn., 579; Belding Bros. v. Frankland, 8 Lea, 67.

2. SAME. *Same.*

   Checks and drafts fraudulently received by a bank after its officers know of its insolvency, can be reclaimed if they can be found and identified, and are not yet collected and credited when the bank closes its doors. (*Post, pp. 543–545.*)

3. SAME. *Same.*

   Fraud in receiving a deposit of checks or drafts after bank officials know that it is insolvent, will not give the depositor a preferential claim against assets in the hands of the receiver of the bank, if the bank, before its failure, had received the proceeds of such paper, or credit therefor from a correspondent, although the bank had on hand when it failed, and always after the deposits were made, more than the amount thereof in cash. (*Post, pp. 543–546.*)

4. SAME. *Same.*

   The identical proceeds of a check or draft fraudulently received on deposit by an insolvent bank, are sufficiently traced by the depositor when it appears that they are included in a fund paid over to the receiver of the bank by a correspondent as the proceeds of credits made after the bank failed but before notice thereof to the correspondent. (*Post, pp. 545, 546.*)

   Cases cited and approved: 2 L. R. A., 699; 133 U. S., 566; 148 U. S., 50; 155 U. S., 563; 99 N. Y., 131.

5. SAME. *Same.*

Crediting checks and drafts to a bank which has failed, although done by a correspondent which does not yet know of the failure, cannot prejudice the rights of persons who deposited such paper in the insolvent bank to recover back their paper or its proceeds, when the deposit was received after the officers of the bank knew it to be insolvent. (*Post, pp. 545, 546.*)

FROM WASHINGTON.

Appeal from Chancery Court of Washington County. JOHN P. SMITH, Ch.

ROBERT BURROW, CARR & REEVES, and KIRKPATRICK, WILLIAMS & BOWMAN for Bruner.

FAW & COX for Bank.

WILKES, J. This bill is filed to recover from the defendant, Cox, as receiver of the First National Bank of Johnson City, $1,163.83, balance to their credit in the bank when it closed its doors, November 12, 1894. There was demurrer to the bill, and it was amended so as to charge that the deposits made November 10 and November 12, 1894, were traceable into and formed part of the fund on hand when the bank failed, and that the fund in bank was all the time after the deposits more than the amount of these deposits.

The Chancellor held that the bank officials obtained the deposits through fraud, knowing the bank to be insolvent when they were received. He was of opinion that $276.32 of the deposits could be

traced into the funds on hand when the bank sus-
pended, and the remainder of $886.86 could not be
so traced.    He gave decree for the former sum,
as a preferred debt, but as to the latter amount
held that the complainant could only share *pro rata*
in the assets of the bank.

Complainant and the receiver both appealed, but,
the record failing to show an appeal granted, the ap-
peals were by this Court dismissed.    Afterward the
cause was brought to this Court by writ of error
on the part of the bank and its receiver, and,
errors being assigned, the case has been heard by
the Court of Chancery Appeals, and the Chancellor's
decree reversed and the bill dismissed.

The facts, as found by the Court of Chancery
Appeals, are that the bank officials were guilty of
fraud in obtaining the complainant's deposits now in
controversy, in not only withholding knowledge of
the bank's insolvency, which was well known to them,
but in active misrepresentation that the bank was in
a safe and solvent condition.    That Court also finds
that there is no evidence that the checks deposited
were on hand when the bank failed, or that their
proceeds constituted a part of the cash turned over
to the receiver.    The question presented in the case
is simply whether the complainant can reclaim, as
against the receiver and the other creditors of the
bank, the amount of the checks deposited on No-
vember 10, 1894, of $18, and on November 12,
1894, of $30 and $36, aggregating $84, upon the

theory that the bank had on hand when it failed, and always after the deposits were made, more than that amount in cash, the deposits having been secured by fraud of the bank officials. The right of a vendor to reclaim specific personal property from a vendee or his assignee, when it has been obtained by fraud and the property can be identified, cannot be disputed. *Belding Bros.* v. *Frankland*, 8 Lea, 67. But does a similar rule apply in a case like the present, when the property is paper, or its proceeds, and cannot be identified in kind, and can only be traced into a common fund, with which it has been commingled? The deposits made by the complainant, whether of paper or money, were received as cash by the Johnson City bank, and credited up to complainant as cash, and the paper was remitted to and received by the New York bank as cash, and so credited up by it to the Johnson City bank.

As to the actual cash deposited on the tenth and twelfth of November, it appears that it went into the general funds of the bank, being credited as cash, and there is no claim that it could be identified and separated from the other funds on hand when the receiver took charge, and the right to reclaim this is lost. *Aiken* v. *Jones*, 9 Pick., 353; *Sayles* v. *Cox*, 11 Pick., 579.

But it appears that on November 10, 1894, there was deposited a check or draft on the United States treasury for $18, and on November 12, 1894, two other government checks for $30 and $36. These

were forwarded for credit, as cash, to the Southern
National Bank of New York, before the Johnson
City bank closed its doors at noon on November
12, 1894. When they were received by the New
York bank, they were credited as cash to the John-
son City bank; but the exact date when thus re-
ceived. and credited is not made to appear. It is
absolutely certain, however, in the natural course of
events, that the checks sent on November 12, 1894,
the same day the Johnson City bank failed, could
not have reached the New York bank and been
credited on the same day; but it is not certain that
the check sent on the tenth could not have reached
the New York bank, and have been credited by it,
before the Johnson City bank closed its doors on
the twelfth at noon. As to these checks a very
nice question arises. It appears that the New York
bank paid over to the receiver of the Johnson City
bank, after he took possession, about $5,000, retain-
ing a further sum of $771.62 to meet certain in-
dorsements upon rediscounts made for the Johnson
City bank. This fund embraced the checks referred to,
but they having been entered up to the general credit
of the Johnson City bank after its failure, the ques-
tion is, can the amount be reclaimed out of the
money paid over to the receiver by the New York
bank? It has been held that when a bank ceases to
do business, the status of each and every creditor
is immediately fixed. After that time a correspond-
ent bank has no power to so deposit or credit funds

received for the account of the insolvent bank as to affect the rights of the customers or creditors of the insolvent bank.

Unquestionably the complainants, in view of the fraud practiced upon them by the bank, had the right, when it closed its doors, to reclaim the government checks deposited on the twelfth, and which were not yet collected or credited, if they could be found. Nor could the New York bank, by afterward collecting these treasury checks and depositing their proceeds to the general account of the Johnson City bank, deprive complainant of his right to such proceeds. The New York bank, after the closing of the doors of the Johnson City bank, could make no further credits to it that could or would in any way affect the right of the complainant to the checks or their proceeds. And this is true, whether the New York bank had notice of the failure of the Johnson City bank or not, when it made the credits. In other words, all checks and drafts received by the New York bank after the Johnson City bank closed its doors, should have been kept separate, and accounted for to the receiver, for the true owners, and not credited to the Johnson City bank; and such credit, if given, could not prejudice complainant's right to rescind his contract for fraud, and recover back the proceeds not credited when the insolvent bank failed. It is evident these identical proceeds were embraced in the $5,000 paid over. This holding is sustained, as we think, by

sound reason, and is supported in principle by the following authorities: *Manfs. Nat. Bank* v. *Continental Bank*, 2 L. R. A., 699; *St. Louis & San Francisco Ry. Co.* v. *Johnson*, 133 U. S., 566; *Commercial Nat. Bank* v. *Armstrong*, 148 U. S., 50; *Old Nat. Bank* v. *German Nat. Bank*, 155 U. S., 563; *Craigie* v. *Hadley*, 99 N. Y., 131; Morse on Banks and Banking, Secs. 589, 589*b*, 629, 630, 631.

It may be that none of the authorities present the question in the exact shape here presented, but the principles decided are, we think, conclusive in this case.

It follows that the decree of the Court of Chancery Appeals must be reversed as to the checks deposited by complainant in the Johnson City bank on November 12, 1894, aggregating $66, and for this amount complainant is entitled to a judgment against the receiver, to be paid as a preferential claim, and the remainder of said decree must be affirmed. There being no proof or presumption that the $18 pension check was not received and credited by the Southern National Bank before the Johnson City bank closed its doors, complainant has not made out his right to reclaim or recover the proceeds of it. The cost of the appeal will be paid by the receiver. The other costs as heretofore adjudged.